**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| NORWOOD PROMOTIONAL PRODUCTS HOLDINGS, INC., et al.,[1] | ) | Case No. 09-11547 (___) |
| Debtors. | ) | Joint Administration Requested |

**APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS THEIR INVESTMENT BANKER AND FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE**

Norwood Promotional Products Holdings, Inc. and its subsidiaries, as debtors and debtors in possession (collectively, "Norwood" or the "Debtors"), file this application (the "Application") for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing Norwood to retain and employ Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey") as its investment banker and financial advisor in connection with the above-captioned chapter 11 cases *nunc pro tunc* to the Petition Date (as defined herein) pursuant to the Agreement (as defined herein). In support of this Application, Norwood submits the declaration of Matthew R. Niemann, a Managing Director of Houlihan Lokey (the "Niemann Declaration"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein. In further support of this Application, Norwood respectfully states as follows:

1 The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Norwood Promotional Products Holdings, Inc. (9391); Norwood Promotional Products, Inc. (4534); Norwood Operating Company, LLC (3446); Advertising Unlimited, LLC (4435); The McCleery-Cumming Company, LLC (2652); and Renaissance Publishing Company, LLC (2740). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 10 W. Market Street, Suite 1400, Indianapolis, Indiana 46204.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Introduction

3. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this Application, Norwood has filed a motion seeking joint administration of these chapter 11 cases. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. No committees have been appointed or designated.

4. A description of Norwood's business, the reasons for commencing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Keith A. Maib, Chief Financial Officer of Norwood Promotional Products Holdings, Inc., in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed on the Petition Date and incorporated by reference as though fully set forth herein.

## Relief Requested

5. By this Application, Norwood seeks entry of an order authorizing Norwood to retain and employ Houlihan Lokey as its investment banker and financial advisor *nunc pro tunc* to the Petition Date, subject to further order of the Court, pursuant to the terms of that certain letter agreement dated February 19, 2009 (as the same may have been and may further be amended, supplemented or modified from time to time, the "Agreement"), a copy of which is attached hereto as Exhibit C and incorporated by reference herein.[2]

## Houlihan Lokey's Qualifications

6. The Debtors seek to retain Houlihan Lokey as their investment banker and financial advisor because it has extensive merger and acquisition ("M&A"), valuation and restructuring related experience and an excellent reputation for providing high quality investment banking and financial advisory services to debtors and creditors in chapter 11 proceedings. Houlihan Lokey also is uniquely qualified to be retained as an investment banker and financial advisor in these chapter 11 cases given its knowledge of the Debtors' business and financial affairs.

7. Houlihan Lokey is an internationally recognized investment banking and financial advisory firm, with fourteen offices worldwide and more than 800 employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. In 2008, Houlihan Lokey ranked as the No. 1 M&A advisor for United States transactions under $2 billion, according to Thomson Financial.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement. The summary of the terms of the Agreement contained herein is provided for the benefit of the Court and parties in interest and, to the extent the summary set forth herein and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.

The firm has been the No. 1 provider of M&A fairness opinions for eight consecutive years and has one of the largest worldwide financial restructuring practices of any investment bank. Established in 1970, Houlihan Lokey annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations. It has one of the largest worldwide financial restructuring practices of any investment bank, with more than 160 professionals in the Financial Restructuring Group alone. The group employs an interdisciplinary approach to engagements and is accustomed to evaluating complex, highly leveraged situations in short time frames. Houlihan Lokey also is a recognized leader in effectuating merger and acquisition transactions for distressed companies, both in-and out-of-court.

8. Houlihan Lokey has served as financial advisor to debtors in some of the largest and most complex restructuring matters in the United States. See, e.g., In re Leiner Health Prods., Inc., No. 08-10446 (Bankr. D. Del. April 8, 2008); In re Propex Inc., No 08-10249 (Bankr. E.D. Tenn. Feb. 13, 2008); In re DDi Corp., No. 03-15261 (Bankr. S.D.N.Y. Aug. 20, 2003); In re Interdent Service Corp., No. 03-13594 (Bankr. C.D. Calif. May 9, 2003); In re Covad Commc'ns Group, Inc., No. 01-10167 (Bankr. D. Del. Nov. 21, 2001); In re Diary Mart Convenience Stores, Inc., No. 01-42400 (Bankr. S.D.N.Y. Sept. 24, 2001); In re StairMaster Sports/Medical Products, Inc., NO. 01-19658 (Bankr. W.D. Wash. Aug. 30, 2001); and In re Bugle Boy Industries, Inc., No. 01-10834 (Bankr. C.D. Calif. Feb 1, 2001).[3]

9. Additionally, Houlihan Lokey has served as the financial advisor to the official committee of unsecured creditors in a multitude of chapter 11 proceedings, including In re Tower Auto., Inc., No. 05-10578 (Bankr. S.D.N.Y. March 31, 2005); In re FV Steel and Wire

---

[3] Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders are available on request of Norwood's counsel.

Co., No. 04-22421 (Bankr. E.D. Wis. Feb. 26, 2004); In re The National Benevolent Association of the Christian Church (Disciples of Christ), No. 04-50948 (Bankr. W.D. TEx. Feb. 16, 2004); In re Wickes, Inc., No. 04-02221 (Bankr. N. D. Ill. Jan. 20, 2004); In re Conseco, Inc., No. 02-49672 (Bankr. N.D. Ill. March, 20 2003); In re WorldCom, Inc., No. 02-13533 (Bankr. S.D.N.Y. Nov. 12, 2002); In re Farmland Industries, Inc., No. 02-50557 (Bankr. W.D. Mo. May 31, 2002); In re Kaiser Aluminum Corp., No. 02-10429 (Bankr. D. Del. May 7, 2002); In re Enron Corp., No. 01-16034 (Bankr. S.D.N.Y. July 8, 2001); and In re The Loewen Group, Inc., No. 99-1244 (Bankr. D. Del. Oct. 6, 1999).[4]

10. As a result of the prepetition work performed on behalf of Norwood, Houlihan Lokey has acquired knowledge of Norwood and its business and is now familiar with Norwood's financial affairs, debt structure, operations and related matters. Specifically, Houlihan Lokey's prepetition work on behalf of Norwood has included, without limitation: (a) advising Norwood on strategic alternatives including various financing and restructuring options; (b) evaluating the sale of certain strategic assets; (c) advising and negotiating on behalf of Norwood with various constituents with respect to potential transactions, and (d) assisting Norwood in structuring its DIP financing. Moreover, Houlihan Lokey advised Norwood during its recapitalization in 2004. Further, upon the Court's approval of Houlihan Lokey's retention as investment banker and financial advisor to Norwood, Houlihan Lokey is prepared to continue providing a range of strategic advisory services to Norwood, including the immediate commencement of a sales process of Norwood's business and assets. Indeed, due to their prepetition work in connection

---

4 Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders are available on request of Norwood's counsel.

thereto, Houlihan Lokey is uniquely positioned to facilitate an orderly and efficient sale process on behalf of Norwood's estates.

11. An experienced investment bank and financial advisor such as Houlihan Lokey fulfills a critical need that complements the services offered by Norwood's other restructuring professionals and advisors. Norwood believes it requires the services of a capable and experienced investment bank and financial advisory firm such as Houlihan Lokey because, among other reasons, Houlihan Lokey's resources and capabilities, together with its prepetition experience advising Norwood, are crucial to Norwood's success in these chapter 11 cases.

**Services to Be Provided**

12. In addition to providing any additional investment banking and financial services as Norwood may request from time to time, Houlihan Lokey will assist in the evaluation of strategic alternatives and render investment banking and financial advisory services to Norwood in connection with these chapter 11 cases, including, without limitation:

a. assisting Norwood in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s) (as such term is defined in the Agreement), including, if appropriate, advising Norwood in the preparation of an offering memorandum;

b. soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners (collectively, the "Investors");

c. assisting Norwood with the development, structuring, negotiation and implementation of any Transaction(s), including, among other things, assisting Norwood with due diligence investigations and participating as a representative of Norwood in negotiations with creditors and other parties involved in any Transaction(s);

d. assisting in valuing Norwood and/or, as appropriate, valuing Norwood's assets or operations, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated by Norwood;

e. providing expert advice and testimony regarding financial matters and fairness and process matters relative to a Transaction;

f. coordinating with Norwood's prepetition lenders and official committee of unsecured creditors and their professionals to provide regular and comprehensive updates to ensure that all parties in interest are fully informed regarding any potential transaction; and

g. advising and attending meetings of Norwood's Board of Directors, creditor groups, official constituencies and other interested parties.

13. The Agreement also contains standard indemnification language with respect to Houlihan Lokey's services. Accordingly, as part of this Application, Norwood requests that the Court approve the indemnification provisions as set forth therein. Norwood will not, however, indemnify Houlihan Lokey for any losses, claims, damages or liabilities incurred by Houlihan Lokey to the extent that a court of competent jurisdiction determines such losses, claims, damages or liabilities result from bad faith, willful misconduct or gross negligence.

**Professional Compensation**

14. Houlihan Lokey intends to apply for compensation for professional services rendered in connection with Norwood's chapter 11 cases, subject to Court approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court, consistent with the proposed compensation structure summarized below and set forth in detail in the Agreement (the "Fee Structure"):[5]

a. Monthly Fees. Norwood will pay Houlihan Lokey a non-refundable cash fee in the amount of $150,000 each month (the "Monthly Fees"). Houlihan Lokey will apply twenty-five percent of each of the Monthly

[5] Contemporaneously herewith, Norwood is seeking to establish procedures for interim compensation of their professionals. As discussed in more detail below, Norwood is seeking to retain Houlihan under section 328(a) of the Bankruptcy Code, and, thus, Norwood believes that Houlihan's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code.

Fees beginning with the seventh Monthly Fee, and fifty percent of each of the Monthly Fees beginning with the thirteenth Monthly Fee, payable under the Agreement as a credit to any Restructuring Transaction Fee and Sale Transaction Fee collectively equal or greater than $2,000,000 to which Houlihan Lokey becomes entitled.

b. Transaction Fees. Norwood will pay Houlihan Lokey the following fees (each a "Transaction Fee" and collectively, the "Transaction Fees"), which in no event will exceed $4,000,000 after application of all offsets for Monthly Fees:

i. Restructuring Transaction Fee. Upon the earlier occurrence of an out-of-court Restructuring Transaction (as defined in the Agreement) and an in-court Restructuring Transaction that, in either case, results in Norwood continuing as a going concern, Norwood will pay Houlihan Lokey a fee in the amount of $2,000,000 on the date of consummation thereof (the "Restructuring Transaction Fee").

ii. Amendment Transaction Fee. Upon the closing of any Amendment Transaction (as defined in the Agreement), Norwood will pay Houlihan Lokey a fee in the amount of $300,000 (the "Amendment Transaction Fee").

iii. Sale Transaction Fee. Upon the closing of each Sale Transaction (as defined in the Agreement), Houlihan Lokey shall earn, and Norwood shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction a cash fee ("Sale Transaction Fee") based upon the Aggregate Gross Consideration ("AGC" as defined in the Agreement). Upon the sale of all or a material portion of Norwood's equity securities or all or substantially all of Norwood's assets, Norwood shall pay Houlihan a fee in accordance with the following schedule: with AGC up to $130,000,000, Norwood will pay Houlihan a Sale Transaction Fee of $2,000,000, plus 3% of incremental AGC between $130,000,000 and $145,000,000, and 5% of incremental AGC in excess of $145,000,000. If more than one Sale Transaction is consummated, Houlihan Lokey shall be compensated based on the AGC from all Sale Transactions, calculated in the manner set forth above; subject, however, to a minimum Sale Transaction Fee of $300,000 for the second and each subsequent Sale Transaction. Upon the closing of a Sale Transaction of less than all or substantially all of Norwood's assets, Norwood and Houlihan shall agree to a mutually acceptable Sale Transaction Fee, subject to a minimum fee of $300,000. With respect to the stalking horse transaction, Houlihan's Sale Transaction Fee would be $2,000,000.

iv. Financing Transaction Fee: Upon the closing of each Financing Transaction (as defined in the Agreement), Norwood shall pay Houlihan Lokey a fee in the amount of (a) 2% of the gross proceeds of any indebtedness raised or committed that is senior to Norwood's other indebtedness, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment to any other obligations of Norwood; (b) 3% of the gross proceeds of any indebtedness issued that is secured by a lien other than a first lien, is unsecured and/or is subordinated; and (c) 5% of the gross proceeds of all equity or equity-linked securities placed or committed (the "Financing Transaction Fees").

c. Expenses. In addition, Norwood shall reimburse Houlihan Lokey for its reasonable out-of-pocket expenses it incurs in connection with its services under the Agreement, subject to the procedures set forth in the Bankruptcy Code, Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

15. The Fee Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases, both in- and out-of-court, involving the services to be provided in these chapter 11 cases. The Fee Structure set forth in the Agreement and generally described above also is consistent with and typical of arrangements entered into by other investment banking and financial advisory firms of comparable standing in connection with the rendering of similar services to clients such as Norwood. Houlihan Lokey and Norwood believe that the Fee Structure is both reasonable and market-based. In determining the level of compensation to be paid to Houlihan Lokey and the reasonableness thereof, Norwood compared Houlihan Lokey's fee proposal to other competing proposals received by Norwood in the investment banking selection process.

16. Norwood acknowledges and agrees that Houlihan Lokey's restructuring and M&A expertise, as well as its experience valuing portions of distressed companies as a going concern, were important factors in determining the amount of the Fee Structure and that the ultimate benefit to Norwood of Houlihan Lokey's services likely could not be measured merely by reference to the number of hours to be expended by Houlihan Lokey's professionals in the

performance of such services. To induce Houlihan Lokey to do business with Norwood in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments Houlihan Lokey expects to undertake and the potential for an unfavorable outcome as a result of factors outside of Houlihan Lokey's control.

17. Upon the execution of the Agreement, Norwood paid Houlihan Lokey a non-refundable initial fee of $150,000. Since payment of the initial fee, Norwood has paid Houlihan Lokey $300,000 on account of Monthly Fees and $30,217.58 for reimbursement of expenses. As of the Petition Date, Houlihan Lokey did not hold a prepetition claim against Norwood for services rendered.

18. After the Petition Date, Houlihan Lokey will seek all compensation in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court. As discussed below, Houlihan Lokey's compensation should be subject to the standard of review of section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders and not subject to any additional standard of review under section 330 of the Bankruptcy Code.

19. Under the Agreement, Houlihan is entitled to (a) a Sale Transaction Fee of $2,000,000 on account of the Stalking Horse Sale Transaction (plus an additional amount to the extent Aggregate Gross Consideration exceeds $130,000,000), (b) a Financing Transaction Fee of $600,000 (2.0% of the DIP Financing raised) and (c) an Amendment Transaction Fee of $300,000 on account of the Forbearance Agreement reached with the Term A Lenders (as each such terms are defined in the First Day Declaration). If there are no objections to Houlihan's retention application and final fee application, upon the entry of a final non-appealable order approving Houlihan's total fees and full and final payment of all of Houlihan's fees (excluding

the Financing Transaction Fee and Amendment Transaction Fee), Houlihan will voluntarily waive the $600,000 Financing Transaction Fee and $300,000 Amendment Transaction Fee for the benefit of the estate.

20. Norwood also requests, and Houlihan Lokey has agreed, that in the event that Houlihan Lokey seeks reimbursement for attorneys' fees from Norwood during the term of these cases pursuant to the Agreement, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own application and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standard of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

21. Houlihan Lokey has not shared or agreed to share any of its compensation from Norwood with any other person, other than other principals and employees of Houlihan Lokey, as permitted by section 504 of the Bankruptcy Code.

**No Duplication of Services**

22. Norwood intends that Houlihan Lokey's services will complement, and not duplicate, the services to be rendered by Kirkland & Ellis LLP, Mackinac Partners, LLC or any other professional retained in these chapter 11 cases. Pursuant to the Agreement, Houlihan Lokey understands that Norwood has retained and may retain additional professionals during the term of the engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of Norwood.

## Houlihan Lokey's Disinterestedness

23. Houlihan Lokey has informed Norwood that, as set forth in the Niemann Declaration, Houlihan Lokey (a) does not hold any interest adverse to Norwood's estates and (b) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

24. Houlihan Lokey will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Houlihan Lokey will use reasonable efforts to promptly provide the Court with a supplemental Declaration, as required by Bankruptcy Rule 2014(a). Further, Houlihan Lokey shall make an additional disclosure in the form of a supplemental Declaration, to the extent such disclosure has not been previously made, of any Houlihan Lokey clients identified as creditors of Norwood representing equal to or greater than 1% of Houlihan Lokey's annual revenues.

## Basis for Relief

### A. Norwood Should be Permitted to Retain and Employ Houlihan Lokey on the Terms in the Agreement Pursuant to Section 328 of the Bankruptcy Code.

25. Norwood seeks approval of the Fee and Expenses pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that Norwood "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer . . . ." 11 U.S.C. § 328(a). Consequently, section 328(a) of the Bankruptcy Code permits the Court to approve the terms of Houlihan Lokey's engagement as set forth in the Agreement, including the Fee Structure and indemnification provisions.

26. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors who, among other things serve as testifying

experts, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit has recognized:

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (internal citations omitted).

27. Furthermore, under the recently enacted Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, certain modifications were made to section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a) (emphasis added). Section 328(a) of the Bankruptcy Code, as amended, now makes clear that debtors may retain, subject to bankruptcy court approval, a professional on a fixed-fee basis such as the Fee Structure with Houlihan Lokey as proposed by Norwood herein.

28. As set forth above, notwithstanding approval of the Agreement under section 328 of the Bankruptcy Code, Houlihan Lokey intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with Norwood's chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the Fee Structure set forth in the

Agreement. The Fee Structure appropriately reflects the nature and scope of services to be provided by Houlihan Lokey and Houlihan Lokey's substantial experience with respect to going concern valuation and expert testimony services, and are consistent with the fee structures typically utilized by Houlihan Lokey and other leading financial advisors, who do not bill their clients on an hourly basis.

29. Indeed, similar fixed and contingency fee arrangements in other large chapter 11 cases have been routinely approved and implemented by courts in this circuit. See, e.g., In re Tropicana Entm't, LLC, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); In re Leiner Health Prods., Inc., No. 08-10446 (KJC) (Bankr. D. Del. April 8, 2008) (order authorizing retention of Houlihan Lokey Howard & Zukin Capital, Inc. on similar terms); In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Foamex Int'l, Inc., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC on substantially the same terms); In re Granite Broad. Corp., No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Lokey Howard & Zukin Capital, Inc.); In re The National Benevolent Association of the Christian Church (Disciples of Christ), No. 04-50948 (RBK)(Bankr. W.D. Tex. Feb. 16, 2004) (order authorizing employment of Houlihan Lokey Howard & Zukin Capital, Inc.); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire & Co., LLC); In re Interdent Service Corp., No. 03-13594 (JR) (Bankr. C.D. Calif. May 9, 2003) (order authorizing employment of Houlihan Lokey Howard & Zukin Capital); In re Dairy Mart Convenience Stores, Inc., No. 01-42400 (AJG) (Bankr. S.D.N.Y. Sept. 24, 2001) (order authorizing employment and retention of Houlihan Lokey Howard & Zukin Capital, Inc.); In re United

Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.).[6]

30. Additionally, the terms and conditions of the Agreement, including the provisions relating to indemnification, were negotiated by Norwood and Houlihan Lokey at arm's-length and in good faith. In light of the foregoing, and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services hereunder, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Houlihan Lokey services for engagements of this nature, Norwood believes that the terms and conditions of the Agreement are fair, reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

31. Indeed, Norwood and Houlihan Lokey submit that the indemnification provision in the Agreement is: (a) a standard provision, both in and outside of chapter 11 cases; (b) reflects the qualifications and limits on the indemnification provisions that are customary in Delaware and other jurisdictions; (c) viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, is reasonable and in the best interests of Norwood's estates, creditors and all parties in interest; and (d) consistent with provisions regularly approved by courts in this and other districts under circumstances similar to these. See, e.g., In re FLYi, Inc., No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006) (order authorizing retention of Miller Buckfire & Co., LLC); In re Foamex Intl., No. 05-12685 (PJW) (Bankr. D. Del. Oct. 17, 2005) (order authorizing retention of Miller Buckfire & Co., LLC); In re Oakwood Homes Corp., No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (order authorizing retention of Miller Buckfire &

---

6 Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders are available on request of Norwood's counsel.

Co., LLC); In re United Artists Theatre Co., No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000) (order authorizing indemnification of Houlihan Lokey Howard & Zukin Capital, Inc.); see also In re Dunmore Homes, Inc., No. 07-13533 (MG) (Bankr. S.D.N.Y. Dec. 20, 2007) (order authorizing retention of Alvarez & Marsal North America LLC and Alvarez & Marsal Securities LLC); In re Granite Broad. Corp., No. 06-12984 (ALG) (Bankr. S.D.N.Y. Feb. 13, 2007) (order authorizing the retention of Houlihan Loker Howard & Zukin Capital, Inc.).[7]

**B. The Retention of Houlihan Lokey Is Critical to Norwood's Success.**

32. Denial of the relief requested herein will deprive Norwood of the assistance of uniquely qualified investment banking and financial advisors and, certainly, would effect an unjust disadvantage to Norwood and all parties in interest. Indeed, Norwood would be forced to engage new investment bankers and financial advisors who lack such a thorough understanding of Norwood's business and the restructuring initiatives that have been implemented over the course of the last few months and which will continue through the pendency of these chapter 11 cases. Hiring a substitute would require the commitment of significant resources to get a substitute up to speed given the steep learning curve involved. Further, comparable investment bankers and financial advisors would charge an equivalent level of fees.

33. The daily pressures of the chapter 11 process generally coupled with the expedited time frame within which Norwood seeks to conduct a marketing and auction process for its assets make it highly unlikely that any substitute advisor would be in a position to duplicate Houlihan Lokey's superior expertise and knowledge of Norwood's business and operations. In addition, Houlihan Lokey's prepetition efforts in soliciting investment proposals

---

7 Because of the voluminous nature of the orders cited herein, they are not attached to this Application. Copies of these orders are available on request of Norwood's counsel.

from multiple third parties positions Houlihan Lokey uniquely to commence such an expedited process. Accordingly, Norwood respectfully submits that the services provided by Houlihan Lokey are critical to Norwood's estates and request that the Court approve the terms and conditions of the Agreement in substantially the form attached hereto.

## **Notice**

34. The Debtors will provide notice of this Application to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the Thirty Largest Unsecured Claims, filed contemporaneously herewith; (c) counsel to the agent for the Debtors' proposed postpetition lenders; (d) counsel to the agent for the lenders under each of the Debtors' prepetition credit facilities; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; and (g) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Norwood respectfully submits that no further notice is necessary.

## **No Prior Request**

35. No prior application for the relief requested herein has been made to this or any other court.

*[The Remainder of This Page is Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein and in the Niemann Declaration, Norwood respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: May 5, 2009

Norwood Promotional Products Holdings, Inc.
Norwood Promotional Products, Inc.
Norwood Operating Company, LLC
Advertising Unlimited, LLC
The McCleery-Cumming Company, LLC
Renaissance Publishing Company, LLC

Name: Paul Lage
Title: President and Chief Executive Officer of Norwood Promotional Products Holdings, Inc., on behalf of the Debtors and Debtors in Possession