# <u>Exhibit C</u>

## Agreement

HOULIHAN LOKEY

***Confidential***

February 19, 2009

Mr. Paul M. Lage
President and CEO
NORWOOD PROMOTIONAL PRODUCTS, INC.
10 West Market Street, Suite 1400
Indianapolis, Indiana 46204

Dear Paul:

This letter agreement (this "Agreement") confirms the terms under which Norwood Promotional Products, Inc., and each of its direct and indirect subsidiaries (collectively, the "Company") has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), as its exclusive financial advisor to provide financial advisory and investment banking services in connection with a financial restructuring or reorganization of the Company and with respect to such other financial matters as to which the Company and Houlihan Lokey may agree in writing during the term of this Agreement.

1. **Services**. In connection with each potential Transaction (as defined below), Houlihan Lokey will report to the Board of Directors of the Company and assist and advise the Company with the analysis, evaluation, pursuit and effectuation of any such Transaction. Houlihan Lokey's services will consist of, if appropriate and if requested by the Company, (i) assisting the Company in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to consummate any Transaction(s), including, if appropriate, advising the Company in the preparation of an offering memorandum; (ii) soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers and/or strategic partners (collectively, "Investors"); (iii) assisting the Company with the development, structuring, negotiation and implementation of any Transaction(s), including participating as a representative of the Company in negotiations with creditors and other parties involved in any Transaction(s); (iv) assisting the Company in valuing the Company and/or, as appropriate, valuing the Company's assets or operations, provided that any real estate or fixed asset appraisals will be undertaken by outside appraisers, separately retained and compensated by the Company; (v) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; (vi) advising and attending meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company and Houlihan Lokey determine to be necessary or desirable; and (vii) providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Company. In the event that, in order to accomplish a Transaction, the Company undertakes an "exchange offer" pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended (a "3(a)(9) Offer") it is agreed and understood that Houlihan Lokey shall not engage, directly or indirectly, in the solicitation of the exchange.

2. **Exclusive Agency.** The Company agrees that neither the Company nor members of its Board of Directors or its management will initiate any discussions regarding a Transaction during the term of this Agreement, except with prior consultation with Houlihan Lokey. In the event the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform Houlihan Lokey of such inquiry so that Houlihan Lokey can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

3. **Fees.** In consideration of Houlihan Lokey's acceptance of this engagement and performance of services pursuant to this Agreement, the Company shall pay the following:

(i) *Initial Fee:* In addition to the other fees provided for herein, upon the execution of this Agreement, the Company shall pay Houlihan Lokey a nonrefundable cash fee of $150,000, which shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement ("Initial Fee");

(ii) *Monthly Fees*: In addition to the other fees provided for herein, upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, without notice or invoice, a nonrefundable cash fee of $150,000 ("Monthly Fee"). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. If this Agreement is terminated by the Company before the end of three months from the Effective Date, the Company hereby agrees to pay to Houlihan Lokey, on the effective date of such termination, any excess of the amount of Monthly Fees that would have accrued during the three months following the Effective Date over the Monthly Fees actually paid to Houlihan Lokey hereunder. 25% of the Monthly Fees timely received by Houlihan Lokey for the seventh through twelfth month of this engagement and 50% of the Monthly Fees timely received by Houlihan Lokey after the twelfth month shall be credited against the Restructuring Transaction Fee or Sale Transaction Fee (as defined below) (so long as the Restructuring Transaction Fee and Sale Transaction Fee collectively are equal or greater than $2 million) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Transaction Fee be reduced below zero; and

(iii) *Transaction Fee(s)*: In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

a. *Restructuring Transaction Fee.* Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below) that results in the Company continuing as a going concern, the consummation of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction that results in the Company continuing as a going concern, the effective date of a plan of reorganization under Chapter 11 of the Bankruptcy Code, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $2.0 million;

b. *Amendment Transaction Fee.* Upon the closing of an Amendment Transaction, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Amendment Transaction Fee") of $300,000.

c. *Sale Transaction Fee.* Upon the closing of each Sale Transaction, Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") based upon Aggregate Gross Consideration ("AGC"), calculated as follows:

| | |
|---|---|
| For AGC up to $130 million: | $2.0 million, plus |
| For AGC of $130 million up to $145 million: | 3.0% of such incremental AGC, plus |
| For AGC in excess of $145 million: | 5.0% of such incremental AGC |

If more than one Sale Transaction is consummated, Houlihan Lokey shall be compensated based on the AGC from all Sale Transactions, calculated in the manner set forth above; subject, however, to a minimum Sale Transaction Fee of $300,000 for the second and each subsequent Sale Transaction. If the Company elects to pursue the sale of the Company's operating assets that constitute less than all or substantially all of the assets of the Company, then the Company and Houlihan Lokey shall agree to a mutually acceptable Sale Transaction Fee for such Sale Transaction, subject to a minimum Sale Transaction Fee of $300,000.

d. *Financing Transaction Fee.* Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (I) 2.0% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company; (II) 3.0% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated; and (III) 5.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed. Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement. It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent (or other issuer of the Securities in such Financing Transaction) or directly by the Company or any of its affiliates. Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of securities issued in exchange for such consideration multiplied by the per security price paid in the then current round of financing. The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any Investor or other purchaser of Securities to secure its financing commitment. The Company currently does not anticipate requesting Houlihan Lokey's assistance in procuring debtor-

in-possession financing and, absent a request by the Company, no fee shall be payable in respect thereof. However, if, and only if, Houlihan Lokey is requested by the Company to solicit interest, or procure, in a debtor-in-possession financing facility, then Houlihan Lokey shall be paid a fee for such financing in accordance with the terms above.

Any Restructuring Transaction Fee, Sale Transaction Fee and Financing Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." Notwithstanding anything to the contrary herein, in no event shall the combination of the amounts payable relating to the Sale Transaction Fees, Restructuring Transaction Fee and Financing Transaction Fee exceed $4 million after application of all offsets for Monthly Fees. All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

4. **Term and Termination.** This Agreement may be terminated at any time by either party upon thirty days' prior written notice to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 through 3 and (ii) Houlihan Lokey's right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due, whether or not any Transaction shall be consummated prior to or subsequent to the effective date of expiration or termination, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Company of the Transaction Fees described in this Agreement: (i) so long as a Transaction is consummated during the term of this Agreement, or, as to a Restructuring Transaction or Sale Transaction only, within twelve months after the date of expiration or termination of this Agreement ("Tail Period"), and/or (ii) if an agreement in principle to consummate a Restructuring Transaction or Sale Transaction (collectively for purposes of this provision, a "Tail Transaction") is executed by the Company during the term of this Agreement, or within the Tail Period, and such Tail Transaction is consummated at any time following such execution with the counterparty named in such agreement, or with any affiliate, employee or investor in such counterparty, or any affiliate of any of the foregoing; provided that as to (i) and (ii) above, (A) no fees shall be paid with respect to the Tail Period if Houlihan Lokey shall have terminated this Agreement, (B) no fees shall be paid for any Tail Transaction during the Tail Period if the Restructuring Transaction Fee has been previously paid (provided that if a Reduced Restructuring Transaction Fee or Sale Transaction Fee (of less than $2.0 million) is paid, then Houlihan Lokey shall be entitled to a Transaction Fee, as applicable, of the difference between $2.0 million and the amount of the Reduced Restructuring Fee (i.e., $1.25 million) or Sale Transaction Fee paid upon the consummation of any Tail Transaction that is entered into or with respect to which an agreement in principle is reached during the term of this Agreement or the Tail Period), (C) no Sale Transaction Fee shall be paid except in regard to a Sale Transaction where the purchaser was identified or contacted by the Company or Houlihan Lokey, or Houlihan Lokey or the Company had discussions with the purchaser regarding a Sale Transaction during the term of this Agreement and (D) the Monthly Fee shall terminate upon termination of this Agreement.

5. **Transaction.** As used in this Agreement, the term "Transaction" shall mean any of the following:

(i) *Restructuring Transaction.* Any transaction or series of transactions that constitute a recapitalization or restructuring of the Company's equity, bank debt and/or other debt securities, including accrued and/or accreted interest thereon, which are outstanding as of the Effective Date, which recapitalization or restructuring is effected pursuant to an exchange

transaction, tender offer, a plan of reorganization or liquidation under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement and/or a modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the Company's equity, bank debt and/or other debt securities (such modification or amendment shall modify or amend such terms for at least 12 months, it being understood that any modifications or amendments for a lesser period shall be considered an "Amendment Transaction") or any combination of the foregoing transactions (each a "Restructuring Transaction");

(ii) *Sale Transaction.* Any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the Company's existing owners, shareholders, employees, creditors and/or the affiliates of each) in one or a series of related transactions of (a) all or substantially all of the equity securities of the Company or any of its direct or indirect subsidiaries or affiliates or any interest held by the Company, any direct or indirect subsidiary or affiliate in any joint venture or partnership or other entity formed by any of them and/or (b) all or substantially all of the assets (including the assignment of any executory contracts) or operations of the Company, any of its direct or indirect subsidiaries or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") (each a "Sale Transaction"); provided, however, that sales of equity interests by any equity holder of Norwood Promotional Products Holdings, Inc. to which the Company is not a party and without the involvement of Houlihan Lokey shall not constitute a Sale Transaction; or

(iii) *Financing Transaction.* (a) Any transaction or series of related transactions that constitutes any refinancing of all or any portion of the Company's existing obligations and/or (b) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by the Company (any or all of which being "Securities"), from any source including, without limitation, any of the Company's existing owners, shareholders, employees, creditors or affiliates (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction").

7. **Aggregate Gross Consideration ("AGC").** For the purpose of calculating the Sale Transaction Fee, the AGC shall be the gross proceeds and other consideration paid to, or received by, or to be paid to or received by, the Company, or any of its equity or debt holders, or other parties in interest, including, without limitation, holders of warrants and convertible securities, and holders of options or stock appreciation rights, whether or not vested (collectively "Constituents"), in connection with the relevant

Sale Transaction. Such proceeds and consideration shall be deemed to include, without limitation: amounts in escrow (only upon receipt from escrow) and any deposits or other amounts forfeited by any Investor; cash, notes, securities, and other property; payments made in installments upon receipt; amounts payable under consulting agreements or similar arrangements with any equity holder; Contingent Payments (as defined below) and/or insurance proceeds upon the occurrence of an insurable event that diminishes the value of the Company. Upon the consummation of a Sale Transaction in which less than 100% of the ownership of the equity interests are sold, the AGC shall be payable and calculated as if 100% of the ownership of the equity interests of the Company on a fully diluted basis had been sold by dividing (i) the total consideration, whether in cash, securities, notes or other forms of consideration, received or receivable by the Company and/or its Constituents by (ii) the percentage of ownership which is sold. If, in the Sale Transaction, no consideration is being paid in respect of the existing equity, AGC of the retained equity shall be determined by the good faith agreement of the parties as to the value of such retained equity implied by the Sale Transaction. In addition, if any of the Company's liabilities are assumed, decreased, reinstated, satisfied or otherwise paid off in conjunction with a Sale Transaction (by the Company or any Investor, in the form of "cure" payments or otherwise), or any of the Company's assets are sold or otherwise transferred outside of the Company's ordinary course of business to another party prior to the closing of a Sale Transaction (including, without limitation, any dividends or distributions paid to security holders or amounts paid to repurchase any securities) or are retained by the Company after the closing of the Sale Transaction, the AGC will be increased to reflect the face value of any such liabilities and the fair market value of any such assets. Contingent Payments shall be defined as the consideration received or receivable by the Company, or any of its Constituents and/or any other parties in the form of deferred performance-based payments, "earn-outs", or other contingent payments based upon the future performance of the Company, or any of its businesses or assets.

8. **Value of Consideration.** For the purpose of calculating the AGC received in a Sale Transaction, any securities, other than a promissory note, will be valued at the time of the closing of the Sale Transaction, without regard to any restrictions on transferability, as follows: (i) if such securities are traded on a stock exchange, the securities will be valued at the average last sale or closing price for the ten trading days immediately prior to the closing of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a ten trading day period immediately prior to the closing of the Sale Transaction; and (iii) if such securities have not been traded prior to the closing of the Sale Transaction, Houlihan Lokey and the Company shall negotiate in good faith to agree on a fair valuation thereof, without regard to any restrictions on transferability, for the purposes of calculating the AGC. For any lease payments and other consideration that is not freely tradeable or has no established public market, if the consideration utilized consists of property other than securities, then the value of such property shall be the fair market value thereof as determined in good faith by Houlihan Lokey and the Company. If any consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. The value of any purchase money or other promissory notes shall be deemed to be the face amount thereof. In the event the AGC includes any Contingent Payments, Houlihan Lokey's Transaction Fee shall be calculated based on the mutually agreed value of such Contingent Payments as of closing. If the parties cannot reach such an agreement, an additional Sale Transaction Fee shall be paid to Houlihan Lokey from, and on account of, such Contingent Payments at the same time that each of such Contingent Payments are received regardless of any prior termination or expiration of this Agreement. Each such additional Sale Transaction Fee shall be calculated pursuant to the provisions of this Agreement based upon the amount of each such Contingent Payment.

9. **Characterization of Multiple and/or Complex Transactions and Treatment of Aurora Transaction.** In the event the Company and Houlihan Lokey are unable to agree in good faith upon the classification of any single Transaction as a Restructuring Transaction, Sale Transaction or Financing Transaction, or if a single Transaction with only one third party shall consist of two, or more, of the foregoing types of Transactions, or elements thereof, Houlihan Lokey shall receive only one Transaction Fee in respect of such Transaction, which shall be equal to the greater of the Restructuring Transaction Fee, Sale Transaction Fee or Financing Transaction Fee, as applicable, as calculated in accordance with the terms of this Agreement. For the avoidance of doubt, if two or more single Transactions occur simultaneously or at different times, whether or not they are connected with or related to one another, the Company shall pay Houlihan Lokey the Transaction Fee for each such Transaction in addition to, and not in lieu of, each other, subject to the provisions above regarding crediting of Transaction Fees. In no event will a single Transaction be characterized as more than one of a Restructuring Transaction, Sale Transaction or Financing Transaction. Notwithstanding the foregoing, if a Restructuring Transaction Fee is earned and paid to Houlihan Lokey, then 50% of any Sale Transaction Fees and Financing Transaction Fees and 100% of any Amendment Transaction Fees previously paid shall be offset against any such Restructuring Transaction Fee paid; provided, the foregoing offsets shall not apply against a Reduced Restructuring Fee. If the transaction structured with Aurora Capital (which transaction shall be substantially similar to that memorialized by a term sheet acknowledged in writing by Houlihan Lokey and the Company within five business days of the Effective Date of this Engagement Agreement) (such transaction as memorialized by the term sheet being referred to herein as the "Aurora Transaction") is pursued by the Company and the Aurora Transaction is ultimately closed on or before June 15, 2009, then Houlihan Lokey's Restructuring Transaction Fee shall be reduced to $1,250,000 ("Reduced Restructuring Fee"); provided however, that such reduction to the Restructuring Transaction Fee shall not apply if (a) the Aurora Transaction is not closed on terms materially similar to the Aurora Transaction term sheet (taken as a whole) ; (b) a third-party other than Aurora Capital is selected by the Company or the Bankruptcy Court as a preferred investor to Aurora for any reason (regardless whether the Aurora Transaction ultimately closes); (c) Aurora Capital in any way exercises any right to terminate the Aurora Transaction (regardless whether the Aurora Transaction ultimately closes), (d) a term sheet is not acknowledged as set forth above within five business days of the Effective Date of this Engagement Agreement, (d) the requisite consents for confirmation of a "pre-packaged" plan of reorganization are not obtained prior to the filing of Chapter 11 by the Company or a re-solicitation is required to obtain the requisite consents subsequent to a filing of Chapter 11, or (e) the Aurora Transaction does not close on or before June 15, 2009. If the Aurora Transaction closes, Houlihan Lokey shall not earn a Financing Transaction Fee with respect to the financing transactions set forth in the Aurora Transaction binding term sheet.

10. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the firm. Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Company.

11. **Expenses.** In addition to all of the other fees and expenses described in this Agreement, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time

in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable actual and documented (except with respect to expenses of the type set forth in (ii) below) out-of-pocket expenses including, but not limited to (i) actual and documented travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Company for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with the performance of this Agreement and the matters contemplated hereby.

12. **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Company shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

13. **Information.** The Company will provide Houlihan Lokey with access to management and other representatives of the Company, as reasonably requested by Houlihan Lokey. The Company will furnish Houlihan Lokey with such information as Houlihan Lokey may reasonably request for the purpose of carrying out its engagement hereunder, all of which will be, to the Company's best knowledge, accurate and complete at the time furnished. The Company further represents and warrants that any financial projections delivered to Houlihan Lokey have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the future financial results and condition of the Company. The Company will promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Company or any other potential party to any Transaction or otherwise reviewed by Houlihan Lokey. The Company understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Company acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any real property or fixed assets or liabilities of the Company or any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey, which shall not be unreasonably withheld. In addition, neither Houlihan Lokey nor the terms of this Agreement may otherwise be referred to without our prior written consent, which shall not be unreasonably withheld.

14. **Additional Provisions Regarding Investor Transactions.** The Company authorizes Houlihan Lokey to provide an information memorandum (or similar document) (as such document may be amended or supplemented and including any information incorporated therein by reference, the "Information Memorandum") and other pertinent information to prospective investors and other purchasers which are

approved by the Company and subject to execution by each such prospective investor or other purchaser of a confidentiality agreement and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without Houlihan Lokey's prior approval. The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser. The Company represents and warrants that the Information Memorandum and such other communications will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading. If an event occurs as a result of which the Information Memorandum (as then supplemented or amended) would include any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, the Company will promptly notify Houlihan Lokey of such event and Houlihan Lokey will suspend solicitations of prospective investors and other purchasers until such time as the Company prepares (and the Company agrees that, if the solicitation of prospective investors and other purchasers has been so suspended after the Company has accepted orders from prospective investors or other purchasers, the Company will promptly prepare) a supplement or amendment to the Information Memorandum which corrects such statement(s) or omission(s). The Company will (i) make available to each bona fide offeree of the Securities such information (in addition to that contained in the Information Memorandum) concerning the offering of the Securities, the Company and any other relevant matters, and (ii) will provide each bona fide offeree the opportunity to ask questions of, and receive answers from, the officers and employees of the Company concerning the terms and conditions of the offering of the Securities.

15. **Limitations on Services as Advisor**. Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the parties hereto. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational administrative, cash management, or similar activities. Houlihan Lokey is providing the Company with Houlihan Lokey's services hereunder as an independent contractor, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between Houlihan Lokey, on the one hand, and the Company and/or its creditors or any other person, on the other hand. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any Transaction(s), which decision shall be made by the Company in its sole discretion.

16. **Bankruptcy Court Approval**. In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless

of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Company shall submit Houlihan Lokey's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of any Chapter 11 filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. Houlihan Lokey shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Houlihan Lokey's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to Houlihan Lokey in all respects. If the order authorizing the employment of Houlihan Lokey is not obtained, or is later reversed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Company shall reimburse Houlihan Lokey for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to Houlihan Lokey in cash. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

17. **Additional Services.** To the extent Houlihan Lokey is requested by the Company to perform any financial advisory or investment banking services which are not within the scope of this engagement (such as rendering a fairness opinion), the Company shall pay Houlihan Lokey such fees as shall be mutually agreed upon by Houlihan Lokey and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described hereinabove.

18. **Post-Termination Services.** If Houlihan Lokey is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), the Company shall pay Houlihan Lokey additional fees to be mutually agreed upon for such services, plus reasonable related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of Houlihan Lokey's counsel in connection therewith.

19. **Credit.** After the announcement or closing of any Transaction, Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Company's logo or other identifying marks) describing its services in connection therewith. Furthermore, if requested by Houlihan Lokey, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to Houlihan Lokey's role as financial advisor to the Company with respect to such Transaction.

20. **Choice of Law; Jury Trial Waiver; Jurisdiction.** THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. EACH OF HOULIHAN LOKEY AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS EQUITY HOLDERS) IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; PROVIDED THAT SUCH CONSENT AND AGREEMENT SHALL NOT BE DEEMED TO REQUIRE ANY BANKRUPTCY CASE INVOLVING THE COMPANY TO BE FILED IN SUCH COURTS, AND IF THE COMPANY BECOMES A DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DURING ANY SUCH CASE, ANY CLAIMS MAY ALSO BE HEARD AND DETERMINED BEFORE THE BANKRUPTCY COURT. BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS. THE COMPANY AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT. THE COMPANY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE COMPANY AT 10 WEST MARKET STREET, SUITE 1400, INDIANAPOLIS, INDIANA 46204.

21. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services under this Agreement, the Company agrees (i) to indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement and (ii) to reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to this Agreement, or such engagement, Transaction or actions. However, the Company shall not be liable under the foregoing indemnity and reimbursement agreement for any loss,

claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and Houlihan Lokey, on the other hand, in connection with the matters contemplated by this Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Company pursuant to this Agreement. The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey. The Company shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action for which indemnification is sought hereunder, unless such settlement or compromise is consented to by the Company, which consent shall not be unreasonably withheld.

If Houlihan Lokey receives notice of the commencement of any action or proceeding in respect of which indemnity may be sought from the Company hereunder, Houlihan Lokey shall notify the Company of such action or proceeding, provided that failure to notify the Company shall not relieve the Company from any liability hereunder (a) if the Company had actual notice of such action or proceeding, or (b) unless and only to the extent of any forfeiture by the Company of substantial rights and defenses resulting therefrom, and will not in any event relieve the Company from any obligation or liability that the Company may have to any Indemnified Party otherwise than on account of the indemnity obligation hereunder. If an Indemnified Party is entitled to indemnification hereunder in connection with an action or proceeding, the Company may, in actions or proceedings other than those brought by the Company, upon notice to such Indemnified Party, assume the defense thereof, by retaining U.S.–based counsel reasonably satisfactory to such Indemnified Party and paying the fees and expenses of such counsel. Any Indemnified Party shall have the right to employ separate counsel in any such action or proceeding and to participate in the defense thereof, but the fees and expenses of such counsel incurred after receipt of such notice from the Company shall be at the expense of such Indemnified Party (but not other reasonable out-of-pocket defense or investigation expenses incurred by or on behalf of such Indemnified Party) unless (a) the Company has agreed to pay the fees and expenses of such counsel, or (b) the Company shall have failed to timely assume the defense of such action or proceeding or retain counsel reasonably satisfactory to such Indemnified Party, or (c) the targets of or named parties to any such action or proceeding (including any impleaded parties) include both the Company and such Indemnified Party, and, as reasonably determined by such Indemnified Party, (i) there may be legal defenses available to such Indemnified Party or another Indemnified Party that are different from or additional to those available to the Company, or (ii) the representation of such parties by the same counsel would be inappropriate due to an actual or potential conflict of interest (in which case, if such Indemnified Party notifies the Company

in writing that it elects to retain separate counsel, (A) the Company shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party, and (B) such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable fees and expenses of such counsel (in addition to local counsel)).

The Company further agrees that neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct, bad faith or gross negligence of such Indemnified Party. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

The Company shall cause any new company that may be formed by the Company or the Company's subsidiaries, for any purpose, to agree to all of the obligations in this Section to Houlihan Lokey in accordance with the foregoing provisions. Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth in this Agreement, the Company will notify Houlihan Lokey in writing thereof (if not previously so notified) and, if requested by Houlihan Lokey, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this Agreement, including the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other credit support arrangements, in each case in an amount and upon terms and conditions satisfactory to Houlihan Lokey.

22. **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets. If appropriate, in connection with performing its services for the Company hereunder Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates, provided, however, that the fees and other obligations described herein comprise all compensation and other obligations to be paid to Houlihan Lokey and its affiliates, and neither Houlihan Lokey, nor any affiliate of Houlihan Lokey, shall charge any separate or additional fees, or seek the payment of any additional obligations, for services rendered pursuant hereto.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement, together with that certain Confidentiality Agreement dated [01/12/09], is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by the parties hereto.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide Houlihan Lokey upon request certain identifying information necessary to verify the Company's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company (and its direct and indirect subsidiaries and controlled affiliates), enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law. The Company understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Company confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

To the extent that the Company hereunder is comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed given by all of them and, as such, shall be binding on the Company.

The Company understands and acknowledges that Houlihan Lokey and its affiliates, including ORIX USA Corporation and its subsidiaries and affiliates (collectively, the "Houlihan Lokey Group"), engage in providing investment banking, securities trading, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Company or any other

party that may be involved in the matters contemplated by this Agreement or have other relationships with the Company. With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties other than the Company, including parties that may have interests with respect to the Company, a Transaction or other parties involved in a Transaction, from which conflicting interests or duties may arise. Although the Houlihan Lokey Group in the course of such other activities and relationships may acquire information about the Company, a Transaction or such other parties, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Company or to use such information on the Company's behalf.

If the foregoing correctly sets forth our Agreement, please sign and return to us the enclosed duplicate hereof along with a check (or wire transfer confirmation) for $150,000 on account of the Initial Fee.

All of us at Houlihan Lokey thank you for choosing us to advise the Company, and look forward to working with you on this engagement.

Very truly yours,

HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.

By: [signature]
Matthew R. Niemann
Managing Director

Accepted and agreed to as of the Effective Date:

NORWOOD PROMOTIONAL PRODUCTS, INC., On behalf of itself, its direct and indirect subsidiaries and its controlled affiliates

By: [signature]
Name: KEITH A. WAIB
Title: CFO

PERSONAL & CONFIDENTIAL

NORWOOD PROMOTIONAL PRODUCTS, INC.
10 West Market Street, Suite 1400
Indianapolis, Indiana 46204

| | |
|---|---|
| Initial Fee | $150,000.00 |

PAYMENT DUE UPON RECEIPT

**Please Send Checks To:**
Houlihan Lokey Howard & Zukin Capital, Inc.
Accounts Receivable Department
1930 Century Park West
Los Angeles, California 90067-6802

**Wire Transfer Instructions:**
Union Bank of California
Transit & ABA #122000496
fbo Houlihan Lokey Howard & Zukin Capital, Inc.
Account #3030160796
Swift Code (International Wires Only): BOFCUS33MPK