# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| NORWOOD PROMOTIONAL PRODUCTS HOLDINGS, INC., et al.,[1] | ) Case No. 09-11547 (PJW) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) Re: Docket Nos. 21, 101 |

## ORDER, PURSUANT TO SECTIONS 105, 363, 365 AND 1146 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6003, 6004, 6006, 9007 AND 9019 AUTHORIZING AND APPROVING (A) SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND (C) CERTAIN RELATED RELIEF

This matter having come before the Court on the motion (the "Sale Motion")[2] of

Norwood Promotional Products, Inc. and its subsidiaries (collectively, the "Debtors") that are

debtors and debtors in possession in the above-captioned cases seeking, pursuant to sections 105,

363, 365 and 1146 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the

"Bankruptcy Code"), the entry of (i) an order approving the Bidding Procedures Relief and

(ii) this order, approving the asset purchase agreement between the Debtors and Brickyard

Acquisition, LLC (the "Purchaser") that is attached hereto as Exhibit A (the "Agreement"),

authorizing and approving the Debtors' consummation of sale of the Debtors' assets and related

transactions contemplated under the Agreement (the "Sale Transactions" and, collectively, the

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Norwood Promotional Products Holdings, Inc. (9391); Norwood Promotional Products, Inc. (4534); Norwood Operating Company, LLC (3446); Advertising Unlimited, LLC (4435); The McCleery-Cumming Company, LLC (2652); and Renaissance Publishing Company, LLC (2740). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 10 W. Market Street, Suite 1400, Indianapolis, Indiana 46204.

[2] All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Agreement.

"Sale") and granting certain related relief; and this Court having held a hearing on the Sale Motion with respect to the Bidding Procedures Relief and having entered on May 21, 2009 an order (the "Bid Procedures Order") approving the Bidding Procedures Relief; and the Debtors having conducted a marketing process in compliance with the Bid Procedures Order and determined that the Purchaser has submitted the highest and best bid for the Purchased Assets; and the court having conducted a hearing on June 19, 2009 (the "Sale Hearing") to consider the Sale Motion and all relief requested therein; and the Court having carefully considered all objections to the Sale Motion as well as the statements of counsel and evidence presented at the Sale Hearing; and it appearing that (i) adequate and sufficient notice has been provided and all interested parties have been afforded an opportunity to be heard with respect to the Bidding Procedures, the Auction, the Sale Motion, the Sale Hearing and the Agreement and all aspects of the Sale contemplated thereunder, (ii) the Court has jurisdiction over this matter; and (iii) that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just and sufficient cause for the relief granted in this Order; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors and their estates, their creditors and all parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefore,

## THE COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in respect of the Sale Motion are hereby incorporated in this Order to the extent not

- 2 -

inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Jurisdiction, Final Order and Statutory Predicates

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for the relief requested in the Sale Motion are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6003, 6004, 6006, 9007 and 9019 and (iii) rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

D.      The assets constitute property of the Debtors' estate and title thereto is vested in the Debtors' estate within the meaning of Section 541(a) of the Bankruptcy Code.

E.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

## Proper Notice and Compliance With Bidding Procedures

F.      On May 21, 2009, the Court entered the Bid Procedures Order which, among other things, (i) approved the Bidding Procedures for the Purchased Assets, (ii) scheduled an Auction Date for the Purchased Assets and the Sale Hearing; (iii) established procedures relating to the assumption and assignment of the Purchased Contracts; and approved the form and manner of the Debtors' Sale Notice and Cure Notice. The Debtors and their professionals have complied with all the requirements of the Bid Procedures Order.

NYI-4173420v4
K&E 14788710.1

G.      As evidenced by the affidavits filed with this Court, (a) on May 28, 2009, and June 2, 2009, the Debtors caused the Sale Notice to be mailed to (i) the Internal Revenue Service; (ii) all other applicable state and federal taxing authorities having jurisdiction over the Purchased Assets; (iii) the United States Department of Justice; (iv) the United States Environmental Protection Agency and any applicable state environmental agency; (v) the counterparties to the Purchased Contracts; (vi) all other parties known to the Debtors who have or may have asserted Interests in or against any of the Purchased Assets; (vii) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (viii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Purchased Assets; (ix) counsel to the Official Committee of the Debtors' Unsecured Creditors; and (x) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") (collectively, the "Notice Parties"), (b) on May 22, 2009, the Debtors caused the Sale Notice to be published in The Wall Street Journal, national edition, in accordance with the Bid Procedures Order and (c) on June 2, 2009, the Debtors filed the Assumption and Assignment Schedule with the Bankruptcy Court and served a copy of the Cure Notice on each counterparty to a Purchased Contract.

H.      These notices (i) have been provided in accordance with Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008 and in compliance with the Bid Procedures Order and sections 105, 363 and 365 of the Bankruptcy Code, (ii) were good and sufficient, and appropriate under the particular circumstances, and reasonably calculated to reach and apprise all holders of Interests (as defined below) about the Bidding Procedures, the Auction, the Sale Hearing, the Agreement and each of the Sale Transactions, including, without limitation, the assumption and assignment of the Purchased Contracts; and no other or further notice is or shall be required.

NYI-4173420v4
K&E 14788710.1

I.   As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors afforded interested potential purchasers a full and fair opportunity to qualify as bidders under the Bidding Procedures and to submit an offer for the Purchased Assets and object to the relief requested in the Sale Motion.

J.   The Auction was conducted in a non-collusive, fair and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets. At the conclusion of the Auction, the Debtors selected the Purchaser as the Successful Bidder as the party that submitted the highest and best offer for the Purchased Assets.

### Sound Business Purpose/Best Interests Of Creditors/Good Faith

K.   The Bidding Procedures set forth in the Bid Procedures Order were non-collusive, in good faith, substantively and procedurally fair to all parties and were the result of arm's length negotiations between the Debtors and the Purchaser.

L.   The Debtors and their professionals have complied, in good faith, in all respects with the Bid Procedures Order. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bid Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets.

NYI-4173420v4
K&E 14788710.1

M.     The Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bid Procedures Order. The Bid Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

N.     The Purchaser is not an "insider" of the Debtors as that terms is defined in the Bankruptcy Code. The Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Purchased Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the Agreement or to the consummation of the sale transaction and transfer of the Purchased Assets, including the Purchased Contracts to the Purchaser. The Purchaser is entitled to all the protections and immunities of section 363(m) of the Bankruptcy Code.

O.     The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full, fair and adequate consideration and reasonably equivalent value for the Purchased Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

NYI-4173420v4
K&E 14788710.1

P.     The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Agreement, sell the Purchased Assets and assume and assign the Purchased Contracts under sections 363 and 365 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors. As more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Purchased Assets if the Sale or Sale Transactions are not consummated quickly; (ii) the Agreement constitutes the highest and best offer for the Purchased Assets; (iii) the Agreement and the Closing (as defined in the Agreement) will present the best opportunity to realize the value of the Debtors on a going concern basis and avoid decline and devaluation of the Debtors' business; and (iv) creditors' recoveries may be diminished unless the Sale or Sale Transactions are concluded expeditiously as provided for in the Sale Motion and pursuant to the Agreement.

Q.     The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the Sale Transactions.

## Validity and Free and Clear Nature of Transfers

R.     The Debtors (i) are the sole and lawful owners of the Purchased Assets, (ii) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets by the Debtors has been duly and validly authorized by all necessary corporate action of Debtors, (iii) have all of the corporate power and authority necessary to consummate the Sale Transactions, (iv) have taken all corporate action necessary to authorize and approve the Agreement and the consummation by

-7-

Debtors of the transactions contemplated thereby; and, notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Purchased Contracts is a legal, valid and effective transfer of the Purchased Assets including any Purchased Contracts.

S.      Except for the Assumed Liabilities (as such term is defined in section 2.3 of the Agreement), the transfer of the Purchased Assets to the Purchaser will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all liens, claims, encumbrances or interests of any kind or nature (collectively, the "Interests"), including, but not limited to those arising under or relating to: (1) any right or option to effect any forfeiture, modification, right of first refusal or termination of the Debtors' or the Purchaser's interest in the Purchased Assets, or any similar rights; (2) taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing, (3) any employment or labor agreements; (4) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (5) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related Claim, including without limitation Claims that might otherwise arise under or pursuant to (A) the Employee Retirement, Income, Security Act of 1974, as amended, (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Worker Adjustment and Retraining Act of 1988, (G) the Age Discrimination and Employee Act of 1967, or (H) the Consolidated Omnibus Budget Reconciliation Act of 1985; (6) any products liability or similar Claims, whether pursuant to any state or federal laws or otherwise, including without limitation, Asbestos Claims; (7) any environmental Claims or Liens

NYI-4173420v4
K&E 14788710.1

arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. or similar state statute; (8) any bulk sales or similar law; and (9) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (10) any mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership; and (11) any debts arising in any way in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by Agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under doctrines of successor.

       T.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, its estate and its creditors, if the sale of the Purchased Assets to the Purchaser, the assignment of the Purchased Contracts to the Purchaser, and the assumption of the Assumed Liabilities by the Purchaser were not, except as otherwise provided in the Agreement, free and clear of all Interests

NYI-4173420v4
K&E 14788710.1

of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

U.     The Debtors may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those (i) holders of Interests and (ii) counterparties to Purchased Contracts who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those (i) holders of Interests and (ii) counterparties to Purchased Contracts who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest.

## Assumption and Assignment of the Purchased Contracts

V.     The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Purchased Contracts listed on the attached Exhibit B to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Purchased Contracts is in the best interests of the Debtors, their estate and their creditors. The Purchased Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser and, accordingly, such assumption and assignment of Purchased Contracts is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

W.     The Debtors have complied with the provisions of the Bid Procedures Order regarding the provision of notice to the counterparties of the Purchased Contracts of the proposed assumption and assignment of the Purchased Contracts and the related Cure Amount.

- 10 -

Such notice was sufficient to provide all counterparties an opportunity to object to the proposed assumption and assignment of the Purchased Contracts. All counterparties that have not objected to the proposed assumption and assignment of the Purchased Contracts are deemed to consent to the assumption and assignment of their respective Purchased Contracts and to the Cure Amounts listed on Exhibit B.

X.     In the ordinary course of business, the Purchaser shall pay any undisputed Cure Amount to the applicable counterparty to a Purchased Contract. The Purchaser has provided adequate assurance of cure of any default existing prior to the date hereof under any of the Purchased Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and (ii) provided or will provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Purchased Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code, and the Purchaser has provided adequate assurance of future performance under the Purchased Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

**NOW THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:**

### General Provisions

1.     The Sale Motion is granted.

2.     All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived or settled and all reservations of rights included in such objections are overruled on the merits.

NYI-4173420v4
K&E 14788710.1

## Approval of the Agreement

3.  The Agreement, and all of the terms and conditions thereof, is hereby approved in its entirety. The failure to specifically include any provisions of the Agreement in this Order shall not impair the effectiveness of any such provisions.

4.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized to perform their obligations under and comply with the terms of the Agreement, and consummate the Sale Transactions, pursuant to and in accordance with the terms and conditions of the Agreement.

5.  The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, together with all additional instruments and documents that the Debtors or the Purchaser deem necessary or appropriate to implement the Agreement and effectuate the Sale Transactions, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

## Transfer of Assets Free and Clear of Claims and Interests

6.  Except for the Assumed Liabilities, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser, and upon the Closing of the Sale shall be, free and clear of all Interests of any kind or nature whatsoever (including, but not limited to, those expressly described in paragraph S of this Order), and all such Interests of any kind or nature whatsoever shall attach to the net proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets, subject to any claims and defenses Debtors may possess with respect

- 12 -

thereto. Any provision in any Agreement which constitutes part of the Purchased Assets or is one of the Purchased Contracts that purports to restrict the transfer of such Agreement as a result of a change in control is hereby deemed unenforceable and all such agreements shall be conveyed to the Purchaser, and the Purchaser shall enjoy all rights and privileges under such agreements.

7. Except as otherwise expressly provided in the Agreement, the Purchaser shall have no obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any and all pension plans) or any other payment with respect to employees or former employees of the Debtors. Except as otherwise expressly provided in the Agreement, the Purchaser shall have no liability with respect to any collective bargaining agreement, employee pension plan, employee welfare or retention, benefit and/or incentive plan to which the Debtors is a party and relating to the Purchased Assets (including, without limitation, arising from or related to the rejection or other termination of any such agreement), and the Purchaser shall in no way be deemed a party to or assignee of any such agreement, and no employee of the Purchaser shall be deemed in any way covered by or a party to any such agreement, and except for Assumed Liabilities, all parties to any such agreement are hereby enjoined from asserting against the Purchaser any and all Claims arising from or relating to such agreement. All notices, if any, required to be given to the Debtors' employees pursuant to the Worker Adjustment and Retraining Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors, and the Purchaser shall have no duties, responsibility or liability therefor.

8. Except for the Assumed Liabilities or as expressly permitted or otherwise specifically provided for in the Agreement, the Purchaser shall have no liability or responsibility

NYI-4173420v4
K&E 14788710.1

for any liability or other obligation of the Debtors arising under or related to the Purchased Assets other than for the Assumed Liabilities. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Agreement, the Purchaser shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character including but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any Taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims of successor liability of the Purchaser, releases which the Court holds shall be deemed to have been given in favor of the Purchaser by all holders of Interests against the Debtors or their respective assets.

9.      Under no circumstances shall the Purchaser be deemed a successor of or to the Debtors for any Interest against or in the Debtors or the Purchased Assets of any kind or nature whatsoever. Except for the Assumed Liabilities, the sale, transfer, assignment and delivery of the Purchased Assets shall not be subject to any Interests, and Interests of any kind or nature whatsoever shall remain with, and continue to be obligations of, the Debtors. Except for the Assumed Liabilities, all persons holding Interests against or in the Debtors or the Purchased Assets of any kind or nature whatsoever (including, but not limited to, the Debtors and/or their respective successors, including any trustees thereof, creditors, employees, unions, former

NYI-4173420v4
K&E 14788710.1

employees and shareholders, administrative agencies, governmental units, secretaries of state, federal, state and local officials, maintaining any authority relating to any environmental, health and safety laws, and their respective successors or assigns) shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, or the Purchased Assets, as an alleged successor or otherwise, with respect to any Interest of any kind or nature whatsoever such person or entity had, has, or may have against or in the Debtors, the Debtors' estates or their officers, directors, shareholders, or the Purchased Assets. Following the Closing, no holder of an Interest in the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Debtors may take in their Chapter 11 cases.

10.     This Order (a) shall be effective as a determination that, except for the Assumed Liabilities, at Closing, all Interests of any kind or nature whatsoever existing as to the Debtors or the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

NYI-4173420v4
K&E 14788710.1

11.     On the Closing of the Sale, the Debtors' creditors and any other holder of

an Interest is authorized and directed to execute such documents and take all other actions as

may be necessary to release its Interests in the Purchased Assets, if any, as such Interests may

have been recorded or may otherwise exist.

12.     If any person or entity that has filed financing statements, mortgages,

mechanic's liens, lis pendens or other documents or agreements evidencing Interests in the

Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction or releases of all Interests which the person or entity has with respect

to the Debtors or the Purchased Assets or otherwise, then (a) the Debtors are hereby authorized

and directed to execute and file such statements, instruments, releases and other documents on

behalf of the person or entity with respect to the Debtors or the Purchased Assets and (b) the

Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order,

which shall constitute conclusive evidence of the release of all Interests in the Debtors or the

Purchased Assets of any kind or nature whatsoever.

### Assumption and Assignment
### to Purchaser of the Purchased Contracts

13.     Pursuant to section 365 of the Bankruptcy Code and, subject to and

conditioned upon the Closing of the Sale, the Debtors' assumption and Debtors' assignment to

the Purchaser of the Purchased Contracts, and the Purchaser's assumption of such contracts on

the terms set forth in the Agreement, is hereby approved, and the requirements of

section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

14.     The Debtors are hereby authorized and directed in accordance with

sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser,

NYI-4173420v4
K&E 14788710.1

effective upon the Closing of the Sale, the Purchased Contracts free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities, and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Purchased Contracts and Assumed Liabilities to the Purchaser.

15.     With respect to the Purchased Contracts: (a) the Purchased Contracts shall be transferred and assigned to, and following the Closing of the Sale remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in any such Purchased Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to and assumption by the Purchaser; (b) each Purchased Contract is an executory contract under section 365 of the Bankruptcy Code; (c) the Debtors may assume the Purchased Contracts in accordance with section 365 of the Bankruptcy Code; (d) the Debtors may assign each Purchased Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Purchased Contract have been satisfied; and (f) upon Closing, in accordance with sections 363 and 365 of

- 17 -

the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Purchased Contract.

16.     All defaults or other obligations of Debtors under the Purchased Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Purchaser in the ordinary course of business by payment of the Cure Amounts approved pursuant to this Order.

17.     The Purchaser has satisfied all requirements under Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of further performance under the Purchased Contracts.

18.     The Debtor and their estates shall be relieved of any liability for any breach of any of the Purchased Contracts occurring from and after Closing the Sale, pursuant to and in accordance with Section 365(k) of the Bankruptcy Code.

19.     Each counterparty to a Purchased Contract hereby is forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors, the Purchaser or the property of any of them, any default arising prior to or existing as of the Closing or, against the Purchaser, any counterclaim, defense, recoupment, setoff or any other claim or form of Interest asserted or assertable against the Debtors; and (ii) imposing or charging against the Purchaser or its affiliates any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to the Purchaser of the Purchased Contracts.  The validity of such assumption and assignments of Purchased Contracts shall not be affected by any dispute between the Debtors and any counterparty to a Purchased Contract.

NYI-4173420v4
K&E 14788710.1

20.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Purchased Contracts.

### Additional Provisions

21.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transactions.

22.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement (and related agreements executed in connection therewith, including, but not limited to, any obligation arising under the Agreement) (a) shall constitute administrative expenses of the Debtors' estates under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code and (b) shall be paid by the Debtors in the time and manner provided for in the Agreement without further order of this Court.

23.     All entities who are in possession of some or all of the Purchased Assets on the Closing are hereby directed to surrender possession of the Purchased Assets to the Purchaser at Closing.

24.     To the maximum extent permitted by section 525 of the Bankruptcy Code, all governmental entities are enjoined and barred from revoking any permit, license or other governmental approval relating to the operation of the Purchased Assets based on the filing of these cases or the consummation of the Sale Transactions. To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental

- 19 -

authorizations and approvals are deemed to have been, and hereby are, ~~directed to be~~ transferred to the Purchaser as of the Closing Date. [Rider A]

25.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed by or to the Debtors, (c) resolve any disputes arising under or related to the Agreement, or the breach of the Agreement as provided in section 12.5 of the Agreement, except as otherwise provided therein, (d) interpret, implement and enforce the provisions of this Order and (e) protect the Purchaser against (i) any of the Excluded Liabilities or (ii) the assertion of any Interests against the Purchased Assets, of any kind or nature whatsoever.

26.     The Sale Transactions are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction (including the assumption and assignment of any of the Purchased Contracts), unless such authorization is duly stayed pending such appeal.

27.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

- 20 -

28.     The transfer of the Purchased Assets pursuant to the Sale Transaction is a transfer pursuant to section 1146(a) of the Bankruptcy Code, and accordingly shall not be taxed under any law imposing a stamp tax or a sale, transfer, or any other similar tax.  Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transfer of any of the Purchased Assets, all without imposition or payment of any stamp tax, transfer tax or similar tax.

29.     This Order and the Agreement shall be binding in all respects upon all creditors of and equity interests in any Debtor (whether known or unknown), any holders of Interests, all counterparties to the Purchased Contracts, all successors and assigns of the Purchaser, the Debtors and their Affiliates and subsidiaries, the Purchased Assets, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection.  Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases, the confirmation order confirming any such chapter 11 plan or any other order in these cases shall conflict with or derogate from the provisions of the Agreement or this Order.

30.     The provisions of this Order are non-severable and mutually dependent and, pursuant to Bankruptcy Rules 6004(g) and 6006(d), this Order shall not be stayed for 10 days and shall be effective immediately upon entry.

31.     The Purchaser may consummate the Sale Transaction at any time after entry of this Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Sale without any notice to the Court and/or any party in interest.

NYI-4173420v4
K&E 14788710.1

32.     In resolution of the Objection of the United States of America to the Notice of Proposed Assumption and Assignment of Certain Executory Contracts and to the Sale of the Debtors' Assets [Docket No. 205] filed by the United States of America (the "U.S."), Notwithstanding any provision to the contrary in the Sale Motion, Agreement (including schedules thereto and other implementing sale documents) or this Order, any licenses, permits, contracts or other interests of the United States of America (the "United States") in which one or more of the Debtors has an interest (collectively, the "Government Contracts") shall be treated, determined and administered in the ordinary course of business as if the Debtors' chapter 11 cases had never been filed and the Debtors and the Purchaser or other Successful Bidder shall comply with all applicable non-bankruptcy law, federal regulations and statutes as well as the provisions of the Government Contracts. Nothing in this Order shall be interpreted to set cure amounts for any of the Government Contracts or affect the rights of the United States to setoff or recoup any amounts due under, or relating to, any Government Contract, which rights are expressly preserved.

33.     In resolution of the informal objection of the Environmental Enforcement Section of the United States Department of Justice, nothing in this Order or the Asset Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Asset Purchase Agreement authorizes the transfer or assignment to Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

- 22 -

34. In resolution of the Limited Objection to Motion of Debtor-In-Possession to Sell Substantially All Assets Free and Clear of All Liens [Docket No. 202] filed by GPE Ardenghi ("GPE"), to the extent that the insurance proceeds to which GPE claims an interest are among those assets included in the sale, GPE's constructive trust claim will attach to the sale proceeds, and entry of this Order is without prejudice to the right of GPE to prosecute such constructive trust claim; provided, however, that nothing in this Order shall be deemed or construed as an admission as to the validity of such claim or as a waiver of the right of any party in interest, or shall impair the ability of any party in interest to contest the validity and amount of GPE's claim; provided, further, that notwithstanding such reservation the Purchased Assets are transferred free and clear pursuant to section 363(f) of the Bankruptcy Code.

Dated: Wilmington, Delaware
June 19, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

35. At Closing, (i) ~~the Purchaser and~~ the Debtors are authorized and directed to pay the Stalking Horse Purchase ("Promotional Holdings"), under the Stalking Horse Agreement, the Breakup Fee and Expense Reimbursement, as set forth in such Agreement and as modified by the Bidding Procedures order and (ii) the Debtors and Escrow Agent are authorized and directed to return to Promotional Holdings the Good Faith Deposit set forth in the Stalking Horse Agreement.

- 23 -

Rider A

provided however, that nothing in this paragraph 24 shall be deemed to apply to the items stricken from Exhibit B, provided further however, that to the extent any additional federal licenses, permits or agreements are identified, the parties reserve all rights and defenses (unaffected by this paragraph 24) with respect to such items and the Court reserves jurisdiction to hear any and disputes with respect to such items.