# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NPPI HOLDINGS, INC., et al.,[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 09-11547 (PJW)<br><br>**Hearing Date: If objections filed**<br>**Objection Deadline: 12/30/2009 @ 4:00 PM** |

## SECOND QUARTERLY AND FINAL APPLICATION
## OF ARENT FOX LLP, AS CO-COUNSEL TO OFFICIAL COMMITTEE
## OF UNSECURED CREDITORS FOR COMPENSATION FOR SERVICES
## RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD
## FROM MAY 14, 2009 THROUGH AND INCLUDING DECEMBER 15, 2009,
## AND REIMBURSEMENT OF COMMITTEE MEMBER FEES AND EXPENSES

| | |
|---|---|
| Name of Applicant: | Arent Fox LLP |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors |
| Date of Retention: | July 15, 2009, *nunc pro tunc* to May 14, 2009 |
| Quarterly period for which compensation and reimbursement is sought: | August 1, 2009 through December 15, 2009 |
| Quarterly amount of compensation sought as actual, reasonable and necessary: | $357,755.00 |
| Quarterly amount of expense reimbursement sought as actual, reasonable and necessary: | $5,338.46 |
| Final period for which compensation and reimbursement is sought: | May 14, 2009 through December 15, 2009 |
| Final amount of compensation sought as actual, reasonable and necessary: | $1,035,229.00 |
| Final amount of expense reimbursement sought as actual, reasonable and necessary: | $13,230.67 |
| Quarterly amount of Committee Member reimbursement sought: | $4,212.00 |
| Final amount of Committee Member reimbursement sought: | $21,703.50 |

This is an:    __X__ interim       __X__ final application

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: Norwood Promotional Products Holdings, Inc. (9391); Norwood Promotional Products, Inc. (4534); Norwood Operating Company, LLC (3446); Advertising Unlimited, LLC (4435); The McCleery-Cuming Company, LLC (2652); and Renaissance Publishing Company, LLC (2740). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 10 W. Market Street, Suite 1400, Indianapolis, Indiana, 46204.

## QUARTERLY FEE APPLICATIONS
## FOR THE PERIOD OF MAY 14, 2009 – DECEMBER 15, 2009

| Fee Application | Period | Interim Fees Requested | Interim Fees Approved | Interim Expenses Requested | Interim Expenses Approved | Committee Member Expenses Requested | Committee Member Expenses Approved |
|---|---|---|---|---|---|---|---|
| First | 05/14/09 - 07/31/09 | $677,474.00 | $677,484.00 | $7,892.21 | $7,892.21 | $17,491.50 | $17,491.50 |
| Second | 08/01/09 - 12/15/09 | $357,755.00 | TBD | $5,338.46 | TBD | $4,212.00 | TBD |
| | | | | | | | |
| **TOTALS** | | **$1,035,229.00** | **TBD** | **$13,230.67** | **TBD** | **$21,703.50** | **TBD** |

NYC/452700.2

## COMPENSATION BY PROFESSIONAL PERSON

## FOR THE PERIOD OF AUGUST 1, 2009 – DECEMBER 15, 2009

| Name of Professional Individual | Position, year assumed position, prior relevant experience, year of obtaining relevant license to practice | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Andrew I. Silfen | Partner since 2003. Member of NJ bar since 1986. Member of NY bar since 1987. | $750 | 0.60 | $450.00 |
| Sanford Hausner | Partner since 2008. Member of NY bar since 1986. Member of NJ bar since 1986. | $735 | 9.10 | $6,688.50 |
| Schuyler G. Carroll | Partner since 2003. Member of NY bar since 1993. | $670 | 204.70 | $137,149.00 |
| Nancy Heermans | Partner since 2006. Member of DC bar since 1997. Member of NC bar since 1978. | $610 | 31.40 | $19,154.00 |
| Jeffrey Vanacore | Joined firm as an associate in 2003. Member of CO bar since 2001. Member of NY and NJ bars since 2003. | $500 | 4.10 | $2,050.00 |
| Andrew C. Udin | Joined firm as an associate in 2007. Member of NJ bar since 2002. Member of NY bar since 2003. Member of DC bar since 2005. | $490 | 45.60 | $22,344.00 |

| Name of Professional Individual | Position, year assumed position, prior relevant experience, year of obtaining relevant license to practice | Hourly Billing Rate (including changes) | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| George Angelich | Joined firm as an associate in 2003. Member of PA bar since 2000. Member of DC bar since 2003. Member of NY bar since 2005. | $480 | 82.60 | $39,648.00 |
| Ronni N. Arnold | Joined firm as an associate in 2009. Member of NY bar since 2007. | $385 | 303.60 | $116,886.00 |
| David J. Kozlowski | Joined firm as an associate in 2008. Member of NY bar since 2007. | $380 | 4.10 | $1,558.00 |
| Jordana Renert | Joined firm as an associate in 2009. Member of the NY bar since 2007. | $330 | 1.10 | $363.00 |
| Aswathi Zachariah | Joined firm as an associate in 2006. Member of MD bar since 2006. Member of DC bar since 2007. | $375 | 2.90 | $1,087.50 |
| Lisa Indelicato | Paralegal | $265 | 8.50 | $2,252.50 |
| Nova A. Constantino | Paralegal | $265 | 28.50 | $7,552.50 |
| Claudia Bass | Paralegal | $260 | 2.20 | $572.00 |
| **TOTAL** | | | **729.00** | **$357,755.00** |

## COMPENSATION BY PROJECT CATEGORY

## FOR THE PERIOD OF AUGUST 1, 2009 – DECEMBER 15, 2009

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Petition, Schedules, First Day Orders (01) | 0.00 | $0.00 |
| Case Management and Operating Expenses (02) | 2.40 | $863.50 |
| Corporate and Business Matters (03) | 16.40 | $7,967.00 |
| Sale and Disposition of Assets (04) | 130.20 | $71,026.00 |
| Asset Analysis and Recovery (05) | 0.50 | $245.00 |
| Claims Administration and Objections (06) | 47.50 | $23,282.00 |
| Miscellaneous Motions and Objections (07) | 47.70 | $20,121.00 |
| Committee and Debtor Communications (08) | 47.60 | $22,159.00 |
| Adversary Proceedings (09) | 2.80 | $1,602.00 |
| Professional Retention (10) | 5.60 | $2,097.50 |
| Plan and Disclosure Statement Matters (11) | 296.30 | $153,567.00 |
| Cash Collateral and DIP Financing (12) | 22.30 | $11,606.50 |
| Employee Benefits and Severance, Pensions (13) | 0.00 | $0.00 |
| Real Estate and Leasing and Executory Contracts (14) | 0.90 | $365.50 |
| Creditor Inquiries (15) | 3.90 | $2,185.50 |
| Automatic Stay and Section 362 and 363 Matters (16) | 0.00 | $0.00 |
| Investigation of Secured Creditor, Equipment Lessors (17) | 1.00 | $490.00 |
| Utilities and Regulatory Matters (18) | 0.00 | $0.00 |
| Chapter 5 Litigation, Collection and Investigation (19) | 2.10 | $1,281.00 |
| Contracts (20) | 0.00 | $0.00 |
| Tax (21) | 16.00 | $0.00 |
| Fee Applications (22) | 61.40 | $38,896.50 |
| Environmental Matters (23) | 0.00 | $0.00 |
| Creditor Information Sharing and 1102 Services (24) | 24.40 | $0.00 |
| **TOTALS** | **729.00** | **$357,755.00** |

## EXPENSE SUMMARY

## FOR THE PERIOD OF AUGUST 1, 2009 – DECEMBER 15, 2009

| Expense Category | Service Provider (if applicable) | Total Expenses |
|---|---|---|
| Database Search | PACER | $260.81 |
| Local Travel | Taxicabs | $308.64 |
| Duplicating | | $387.70 |
| Out of Town Meals | | $40.99 |
| Out of Town Travel | Amtrak, taxicabs | $1,138.50 |
| Overnight Delivery | FedEx | $7.14 |
| Overtime - Meals | | $312.11 |
| Phone Charges | Long distance charges | $502.92 |
| Professional Service Fees | CSC | $254.40 |
| Taxicabs | | $24.87 |
| Transcripts | Veritext | $297.50 |
| Westlaw | | $1,802.88 |
| **TOTAL** | | **$5,338.46** |

| | |
|---|---|
| In re: | Chapter 11 |
| NPPI HOLDINGS, INC., et al.,[2] | Case No. 09-11547 (PJW) |
| Debtors. | **Hearing Date: If objections filed**<br>**Objection Deadline: 12/30/2009 @ 4:00 PM** |

## SECOND QUARTERLY AND FINAL APPLICATION OF ARENT FOX LLP, AS CO-COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM MAY 14, 2009 THROUGH AND INCLUDING DECEMBER 15, 2009, AND REIMBURSEMENT OF COMMITTEE MEMBER FEES AND EXPENSES

The law firm of Arent Fox LLP ("Arent Fox") hereby makes this final application (the

"Final Application") for approval of all of its interim fee applications filed in connection with the

chapter 11 cases of NPPI Holdings, Inc., *et al.,* the above captioned debtors and debtors-in-

possession (the "Debtors") for professional legal services rendered on behalf of the Official

Committee of Unsecured Creditors (the "Committee") during the period from May 14, 2009,

through and including December 15, 2009 (the "Final Application Period"), pursuant to

(i) Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"),

(ii) Bankruptcy Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedures of the

United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"),

(iv) the United States Trustee's Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses filed under 11 U.S.C. Section 330, effective January 30, 1996, and

---

[2]   The Debtors, along with the last four digits of each Debtor's federal tax identification number, are:  Norwood Promotional Products Holdings, Inc. (9391); Norwood Promotional Products, Inc. (4534); Norwood Operating Company, LLC (3446); Advertising Unlimited, LLC (4435); The McCleery-Cuming Company, LLC (2652); and Renaissance Publishing Company, LLC (2740).  The location of the Debtors' corporate headquarters and the service address for all Debtors is:  10 W. Market Street, Suite 1400, Indianapolis, Indiana, 46204.

NYC/452700.2

(v) this Court's order establishing procedures for interim compensation and reimbursement of expenses for professionals and official committee members, dated June 1, 2009 [Docket No. 142] (the "Compensation Order").

By this application, Arent Fox seeks an order allowing compensation in the amount of $357,755.00 for actual, reasonable and necessary professional services rendered to or on behalf of the Committee in the above-captioned cases during the period from August 1, 2009 through December 15, 2009, (the "Second Quarterly Period"), and allowing reimbursement for actual and necessary expenses incurred during the Second Quarterly Period in the amount of $5,338.46.

In addition, by this application, Arent Fox seeks an order (i) allowing final compensation in the amount of $1,035,229.00 for actual, reasonable and necessary professional services rendered to or on behalf of the Committee in the above-captioned cases from the retention date through the date hereof, and allowing final reimbursement for actual and necessary expenses incurred from the retention date through the date hereof in the amount of $13,230.67, (ii) authorizing and directing the Debtors to pay Arent Fox an amount equal to the sum of such allowed compensation and expense reimbursement, less any amounts previously paid by the Debtors, and (iii) allowing reimbursement of fees and expenses incurred by members of the Committee during the Second Quarterly Period in the amount of $4,212.00 and allowing final reimbursement for fees and expenses incurred by members of the Committee during the Final Application Period in the amount of $21,703.50. In support of this Final Application, Arent Fox states as follows:[3]

---

[3] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the Sale Motion, Conversion Motion or GUC Trust Motion, as applicable.

## Preliminary Statement

1.     Throughout these proceedings, the Committee protected the interests of the unsecured creditors and worked to preserve estate assets and maximize value.  The Committee played a vital and central role in these cases.

2.     Arent Fox played a vital and essential role in five key phases of these cases:

     (i)      working with the Debtors to ensure a fair and spirited sale process that resulted in a significantly improved winning bid over the stalking horse bid;

     (ii)     quickly and thoroughly investigating and challenging the liens of the Term A Lenders through a multi-prong litigation approach that included an adversary proceeding, a request for a temporary restraining order, a motion to prohibit a credit bid by the Term A Lenders, and a sale objection;

     (iii)    compromising the sale objection and structuring a settlement which provided for nearly all unsecured creditors to be paid in full and for the remaining unsecured creditors to receive a funded distribution through a settlement payment to the Committee;

     (iv)    overseeing the wind-down of the Debtors' affairs; and

     (v)     structuring a process to distribute settlement funds in cooperation with the Chapter 7 Trusete.

3.     When the Committee selected Arent Fox as its counsel, the Debtors had outstanding debt in the aggregate principal amount of approximately $295.4 million, consisting primarily of $162.5 million of outstanding borrowings under Norwood Promotional Products

Inc.'s secured credit facilities, $127.2 million of outstanding borrowings under Holdings' credit facilities and approximately $3.0 million of various other debt obligations, including capital leases, issued and outstanding letters of credit and outstanding performance bonds. As the same time, the estimated cash recovery for a sale of the Debtors' business was estimated at less than $80 million, all of which would be paid to the secured creditors. It seemed unlikely that a sale would result in recovery of any value for the Debtors' estates; instead, all the value would be retained by the Term A Lenders. Through the efforts of the Committee and Arent Fox as counsel, after multiple bidders participated in a spirited Auction, the result was a sale whereby the Purchaser assumed substantial liabilities, effectively paying in full the unsecured trade debt.

4.  Once Arent Fox was appointed and retained as counsel, the Committee analyzed the Debtors' liens and identified problems with the liens. As a result of this investigation, the Committee commenced an action by filing the Complaint to Avoid and Preserve Liens and Security Interest for the Benefit of the Estate and for Related Injunctive and Declaratory Relief [Docket No. 199] (the "Complaint") (Adv. Pro. No. 09-51059). Afterwards, the Debtors (as to certain issues), the Term A Agent, and the Committee negotiated and eventually entered into the Term A Settlement Stipulation regarding, among other things, the validity of the liens held by the Term A Agent, the ability of the Term A Agent to credit bid its secured claim at the Auction, and the distribution of the Sale proceeds. Pursuant to the Term A Settlement Stipulation, the Term A Agent was granted an Allowed Secured Claim of approximately $133.8 million. In turn, the Term A Agent waived any recovery or distribution it otherwise would be entitled to on account of any deficiency claim relating to the Mezzanine Agreement. The Term A Settlement Stipulation also set forth a distribution schedule for Sale Proceeds, which included, among other

things, estate wind-down and administrative claims, and a direct distribution of certain proceeds to unsecured creditors – excluding the Term A Agent and/or Term A Lenders.

5.      Following the Sale Closing, the Debtors, the Committee, the DIP Lender, and the Term A Agent entered into the Committee Settlement Stipulation, which resolved, among other things, distribution of Sale Proceeds earmarked for General Unsecured Creditors as set forth in the Term A Settlement Stipulation.  Pursuant to the Committee Settlement Stipulation, the Committee received an amount equal to $2,027,300 for the benefit of General Unsecured Creditors in accordance with the Term A Settlement Stipulation, and the DIP Lender made a gift to the General Unsecured Creditors in the amount of $10,000.

6.      Finally, pursuant to a third settlement stipulation, the Term A Agent agreed to reallocate $300,000 to the Committee to be used for the purpose of assisting in the distribution of the Settlement Reallocation to unsecured creditors and the administration of the trust for the benefit of unsecured creditors.  Together, these three settlement stipulations resulted in $2,337,300 of additional funds available for distribution to general unsecured creditors.

7.      In summary, when Arent Fox was retained, these cases appeared to offer no possible recovery for general unsecured creditors.  But through the hard work of Arent Fox and the Committee, trade creditors will be paid in full and other general unsecured creditors are poised to receive a substantial distribution and possibly even paid in full.  The Committee worked cooperatively and consensually with the Debtors and their professionals to achieve this extraordinary result, which work included review of complex facts and litigation, resulting in a successful settlement for general unsecured creditors.

## Jurisdiction

8. This Court has jurisdiction to consider this matter pursuant to Section 157 and 1334 of Title 28 of the United States Code. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

### A. Introduction

9. On March 5, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

10. On July 15, 2009, the Court approved the retention of Arent Fox as counsel to the Committee *nunc pro tunc* to May 14, 2009 [Docket No. 331].

### B. Sale of Substantially All of the Debtors' Assets

11. The Debtors commenced these chapter 11 cases to effectuate a going-concern sale of their business to the stalking horse purchaser (the "Stalking Horse") or to a higher and better bidder emerging from a competitive bidding process and chapter 11 auction. To that end, the Debtors filed a motion with the Court [Docket No. 21] (the "Sale Motion") for (a) entry of an order (the "Bid Procedures Order") approving, among other things, bidding procedures to facilitate an orderly sale process and procedures for assuming and assigning executory contracts and unexpired leases and (b) entry of an order (the "Sale Order") approving, among other things, the sale of substantially all of the Debtors' assets and authorizing the Debtors to assume and assign executory contracts and unexpired leases. The Bid Procedures Order was entered on May 21, 2009 [Docket No. 101].

12.     Following an extensive marketing process, a chapter 11 auction was held on June 18, 2009, from which Norwood Promotional Products, LLC (f/k/a Brickyard Acquisition, LLC) ("NPPLLC") emerged as the successful bidder.  After the sale hearing held on June 19, 2009, the Court entered the Sale Order [Docket No. 242] by which the Court, among other things: (a) approved the consummation of the sale (the "Sale") and the Asset Purchase Agreement dated June 18, 2009, between the Debtors and NPPLLC [Docket No. 238] (together with any exhibits, schedules, agreements, documents and instruments related thereto, as each of the same may have been and may further be amended, modified or supplemented from time to time in accordance with their terms, the "APA"); and (b) authorized and directed the Debtors to assume and assign the Purchased Contracts to NPPLLC consistent with the terms of the APA.  In accordance with the APA, the Sale closed on July 3, 2009 (the "Closing").

**C.     Resolving Issues Surrounding the Term A Agent's Ability to Credit Bid**

13.     Prior to entry of the Bid Procedures Order, the Bank of New York Mellon, as the Term A Agent (the "Term A Agent") had indicated an interest in credit bidding on the Debtors' assets.  In connection therewith, the Term A Agent filed an objection to entry of the Bid Procedures Order because, among other things, the proposed Bid Procedures Order required the Term A Lenders to submit a cash deposit despite their intention to credit bid pursuant to section 363(k) of the Bankruptcy Code.  In response to the objection, the Bid Procedures Order was amended to provide that the Term A Agent was deemed a Qualified Bidder (as defined in the Bid Procedures Order) without the need to provide a cash deposit to the extent that the relevant bid included payment, in cash, for certain obligations as of the Sale's closing.

14.     Prior to the Auction (as defined in the Bidding Procedures Order), the Committee filed its (i) Motion of the Official Committee of Unsecured Creditors Pursuant to Sections 105

- 11 -

and 363(k) of the Bankruptcy Code for an Order Prohibiting or Temporarily Disallowing Setoff Rights With Respect to the Term A Lenders' Ability to Credit Bid or, in the Alternative, Requiring an Amount Equal to the Purchase Price to be Deposited in an Escrow Account Until the Date the Challenge is Resolved [Docket No. 192] (the "Credit Bid Disallowance Motion") and (ii) Motion for Temporary Restraining Order and Preliminary Injunction [Docket No. 200] (the "TRO/Preliminary Injunction Motion"), filed in connection with the Complaint. These pleadings essentially challenged the validity and amount of the Term A Agent's liens and sought to prohibit the Term A Agent from credit bidding during the Auction.

15.    Thereafter, the Debtors (as to certain issues), the Term A Agent, and the Committee (the "Term A Settlement Parties") entered into negotiations regarding, among other things, the validity of the liens held by the Term A Agent, the ability of the Term A Agent to credit bid its secured claim at the Auction, and the distribution of the Sale proceeds. On June 16, 2009, the Parties entered into a stipulation resolving these issues (the "Term A Settlement Stipulation"), which was approved by the Bankruptcy Court on the same day [Docket No. 230].

**D.    Allocation of Sale Proceeds**

16.    Pursuant to the Term A Settlement Stipulation, the Term A Agent was granted an Allowed Secured Claim in these Chapter 11 Cases in the amount of $133,856,031. In turn, the Term A Agent waived any recovery or distribution it otherwise would be entitled to on account of any deficiency claim relating to the Mezzanine Agreement. The Term A Settlement Stipulation also set forth a distribution schedule for Sale Proceeds, which included, among other things, (i) satisfaction of (a) the outstanding DIP Credit Agreement Obligations, (b) the break-up fee (as defined in the Bidding Procedures Order), (c) L/C collateralization, (d) professional fees/success fees, (e) estate wind-down and administrative claims, and (ii) a direct distribution of

- 12 -

certain proceeds to unsecured creditors – excluding the Term A Agent and/or Term A Lenders – on account of any deficiency claim.

17.     Following the Sale Closing, the Selling Debtors, the Committee, the DIP Lender, and the Term A Agent entered into a settlement stipulation (the "Committee Settlement Stipulation"), which resolved, among other things, distribution of Sale Proceeds earmarked for General Unsecured Creditors as set forth in the Term A Settlement Stipulation. The Bankruptcy Court approved the Committee Settlement Stipulation on July 13, 2009 [Docket No. 319].

18.     Upon the closing of the Sale, the DIP Lender was paid in full.  Additionally, pursuant to the Committee Settlement Stipulation, (i) the Term A Lenders received payment on July 15, 2009 of $99,525,627.20, (ii) the Committee received an amount equal to $2,027,300 for the benefit of General Unsecured Creditors in accordance with the Term A Settlement Stipulation, and (iii) the DIP Lender made a gift to the General Unsecured Creditors in the amount of $10,000 (the "DIP Lender Gift").

19.     Finally, pursuant to a third settlement stipulation (the "Settlement Reallocation Stipulation"), the Term A Agent agreed to reallocate $300,000 to the Committee or its successor to be used for the purpose of assisting in the distribution of the Settlement Reallocation to unsecured creditors and the administration of the trust for the benefit of unsecured creditors.  The Court entered an order approving the Settlement Reallocation Stipulation on November 18, 2009 [Docket No. 568].  Together, these three settlement stipulations resulted in $3,337,300 of additional funds available for distribution to general unsecured creditors.

E.     **Conversion to Chapter 7 of the Bankruptcy Code**

20.     On October 28, 2009, the Debtors filed the Motion for an Order (I) Converting Cases to Chapter 7; and (II) Setting Bar Date for Filing Final Chapter 11 Fee Applications and

NYC/452700.2

Establishing a Hearing Date Thereon (the "Conversion Motion") [Docket No. 517]. In the Conversion Motion, the Debtors stated that both the Debtors and the Committee determined that there are few, if any, material unencumbered funds to be obtained for the benefit of general unsecured creditors, and that these estates could be wound down and administered most efficiently by confirming the independent establishment and management of the GUC Trust to distribute certain funds available to general unsecured creditors, coupled with a conversion of these cases to cases under chapter 7 of the Bankruptcy Code and administration of the remaining assets by a chapter 7 trustee.

21.     On October 30, 2009, the Committee filed their Motion for an Order Authorizing the Creation of the GUC Trust Agreement and the Appointment of the GUC Trustee, and Establishing a Hearing Date Thereon (the "GUC Trust Motion") [Docket No. 526]. By the GUC Trust Motion, the Debtors, the Committee and the Proposed GUC Trustee sought authority to enter into the GUC Trust Agreement for the purposes of establishing the GUC Trust and authorizing the GUC Trustee to, among other things, (i) make the Distributions of the Trust Assets to Beneficiaries, and (ii) conduct and complete the Claims Reconciliation.

22.     On November 24, 2009, the Court entered an order (the "Conversion Order") granting the Conversion Motion and converting the Debtors' cases to cases under chapter 7 of the Bankruptcy Code, effective November 30, 2009 at 11:59 p.m. [Docket No. 576]. The Conversion Order provides as follows: "The chapter 11 professionals retained in these chapter 11 cases shall file final fee application for compensation (including, without limitation, fees and expenses which are not the subject of any previous application, and any "holdback" retained in accordance with the Interim Compensation Order), which final applications shall be filed with this Court and served in accordance with the notification and service procedures set forth in the

Interim Compensation Order for service of interim compensation applications, on or before 4:00 p.m. on December 15, 2009, or be forever barred from receiving any such compensation." Conversion Order at ¶ 4.

23.     After the hearing on the GUC Trust Motion, the Court determined, among other things, that upon conversion, the Committee shall be a post-conversion committee (the "PCC"), consisting of the same members as currently constitute the Committee and represented by the same attorneys and financial advisors (together, the "PCC Professionals") and shall be authorized and permitted to undertake any and all actions with respect to the Trust Funds, subject to approval of this Court, including, without limitation, asserting any and all rights and claims of general unsecured creditors in and to the Trust Funds pursuant to, among other things, the Committee Settlement Stipulation and the Settlement Reallocation Stipulation.

## Relief Requested

24.     Arent Fox seeks quarterly approval of its compensation for fees in the amount of $357,755.00 and expense reimbursement of $5,338.46 for the Second Quarterly Period. Pursuant to the Compensation Order, Arent Fox submitted monthly fee applications for the Second Quarterly Period for the period August 1, 2009 through December 15, 2009, and as further described in detail below.

25.     This is also the Final Application filed by Arent Fox in these cases.  Arent Fox seeks allowance of final compensation for actual, reasonable and necessary professional services rendered by Arent Fox as co-counsel to the Committee during the Final Application Period in the amount of $1,035,229.00, and final reimbursement of actual, reasonable and necessary expenses incurred during the Final Application Period in the amount of $13,230.67.

26.     Arent Fox diligently assisted the Committee in the Committee's efforts to fulfill its statutory and fiduciary duties by trying to maximize value for the Debtor's entire estate and by representing the interests of the unsecured creditor constituency in this bankruptcy proceeding.

27.     In the Order approving Arent Fox's previous quarterly fee application, Arent Fox was awarded, on an interim basis, fees of $677,474.00 and expenses of $7,892.21.

28.     All services for which compensation is requested by Arent Fox were performed on behalf of the Committee, and not on behalf of any other person or entity. Arent Fox maintains written records of the time expended in providing the professional services required by the Committee. These records are maintained in the ordinary course of Arent Fox's practice.

29.     In accordance with the Compensation Order, Arent Fox submitted regular monthly fee applications (collectively, the "Monthly Fee Applications") as follows:

(a)     May 14, 2009 through May 31, 2009, in the amount of $224,533.50 in fees and $1,924.59 in expenses [Docket No. 369];

(b)     June 1, 2009 through June 30, 2009, in the amount of $368,066.00 in fees and $4,231.36 in expenses [Docket No. 371];

(c)     July 1, 2009 through July 31, 2009, in the amount of $84,874.50 in fees and $1,736.26 in expenses [Docket No. 414];

(d)     August 1, 2009 through August 31, 2009, in the amount of $64,721.50 in fees and $1,005.00 in expenses [Docket No. 479];

(e)     September 1, 2009 through September 30, 2009, in the amount of $57,048.00 in fees and $1,490.01 in expenses [Docket No. 542];

(f)     October 1, 2009 through October 31, 2009, in the amount of $135,460.00 in fees and $791.63 in expenses [Docket No. 569]; and

(g)     November 1, 2009 through November 30, 2009, in the amount of $87,052.50 in fees and $1,938.93 in expenses.

- 16 -

30.     In addition, pursuant to the Compensation Order, Arent Fox filed a quarterly fee application ("First Quarterly Fee Application") for the period May 14, 2009 through July 31, 2009, in the amount of $677,474.00 in fees and $7,892.21 in expenses [Docket No. 442]. An omnibus order approving the First Quarterly Fee Application was entered on October 19, 2009 [Docket No. 503].

31.     All services for which compensation is requested by Arent Fox were performed on behalf of the Committee. During the Second Quarterly Period, Arent Fox rendered legal services to the Committee in the total amount of $357,755.00 stated at the hourly rates in effect for each of the firm's professionals at the time such services were rendered, and incurred reimbursable expenses and out-of-pocket disbursements in the total amount of $5,338.46.

32.     By this Final Application, Arent Fox seeks final approval of all of its interim fee applications, monthly, quarterly, along with its second quarterly fee application, in the total amount of $1,035,229.00 in fees and $13,230.67 in expenses during the Final Application Period.

33.     Pursuant to 11 U.S.C. § 503(b)(3)(F), Arent Fox also seeks reimbursement of Committee Member fees and expenses in the amount of $4,212.00 during the Second Quarterly Period, and approval, on a final basis, for reimbursement of Committee Member fees and expenses during the Final Application Period in the amount of $21,703.50.

## SUMMARY OF SERVICES RENDERED

34.     Arent Fox has advised the Committee on a regular basis with respect to legal matters in connection with the chapter 11 cases of the Debtors. Further, Arent Fox has prepared or assisted in the preparation of various actions, motions, applications, orders and other pleadings submitted to the court for consideration and has performed all necessary professional services.

- 17 -

35.     The chart entitled **Compensation By Professional Person** (above) is a summary statement of fees incurred by each professional who rendered services during the Second Quarterly Period.

36.     Attached to each of the Monthly Fee Applications as Exhibit A, and incorporated herein by reference, is the detailed daily description of services rendered by each attorney and legal assistant at Arent Fox with respect to whom interim compensation is sought for the period covered by each Monthly Fee Application, compiled from time records maintained by Arent Fox in the ordinary course of its business, divided into sections corresponding to "project categories."

37.     The chart entitled **Compensation by Project Category** (above) is a summary statement of fees incurred by project category during the Second Quarterly Period. Each Monthly Fee Application includes a detailed summary of services rendered by project, including a summary of the fees and total hours.

38.     The chart entitled **Expense Summary** (also above) is a summary statement of expenses incurred during the Second Quarterly Period.

39.     Attached to each of the Monthly Fee Applications as Exhibit B is a summary of the expenses incurred during each billing period.

## Amount Requested

40.     For the Second Quarterly Period, Arent Fox seeks final approval of $357,755.00 in fees and $5,338.46 in expense reimbursement.

41.     For the Final Application Period, Arent Fox seeks final approval of $1,035,229.00 in fees and $13,230.67 in expense reimbursement.

- 18 -

## Applicable Authority

42.     Subject to this Court's approval, the Debtors are required to pay Arent Fox for services at its usual hourly rates in effect at the time such services are rendered. The Debtors are required, subject to this Court's approval, to reimburse Arent Fox in full for its cash disbursements and for such expenses as the firm customarily bills to its clients.

43.     With respect to the level of compensation, section 330(a)(1) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1). Section 330(a)(1)(3)provides: "In determining the amount of reasonable compensation to be awarded, to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, . . . ."

44.     The congressional policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to 'provide sufficient economic incentive [to lure competent bankruptcy specialists] to practice in the bankruptcy courts.'") (quoting *In re McCombs*, 751 F.2d 286, 288 (8th Cir. 1984)).

45.     The professional services rendered by Arent Fox required a high degree of professional competence and expertise. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained have greatly benefited the general unsecured creditors of the Debtors.

- 19 -

46.    As shown by this Final Application and supporting exhibits, Arent Fox spent its time economically and without unnecessary duplication of time.  In addition, the work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

## Certifications and Notice

47.    The undersigned certifies that no other payments have been promised to the firm and no payments have been received by the firm for services rendered in these cases, except for the payment of fees and reimbursement of expenses.

48.    The Debtors' estates are the source of compensation promised to Arent Fox. There is no agreement or understanding between Arent Fox and any persons other than the partners of Arent Fox for the sharing of compensation to be received for services rendered in these cases.

49.    Arent Fox certifies that it has reviewed the requirements of Local Rule 2016-2 and that this Final Application complies with Local Rule 2016-2.

50.    Copies of this Final Application have been served upon the Debtors, the United States Trustee, counsel to the Debtors, and all parties who filed Requests for Notice with the Clerk of the Court.

**WHEREFORE**, Arent Fox respectfully requests that this Court enter a final order: (a) allowing Arent Fox compensation in the amount of $357,755.00, for actual reasonable and necessary professional services rendered to or on behalf of the Committee during the Second Quarterly Period and reimbursement of $5,338.46 for actual, reasonable and necessary expenses incurred during the Second Quarterly Period, (b) allowing Arent Fox final compensation in the amount of $1,035,229.00, for actual reasonable and necessary professional services rendered to

or on behalf of the Committee during the Final Application Period and final reimbursement of $13,230.67 for actual, reasonable and necessary expenses incurred during the Final Application Period, (c) authorizing and directing the Debtors to pay Arent Fox an amount equal to the allowed compensation and expense reimbursement, less any amounts previously paid by the Debtors, (d) allowing reimbursement of fees and expenses incurred by members of the Committee during the Second Quarterly Period in the amount of $4,212.00 and allowing final reimbursement for fees and expenses incurred by members of the Committee during the Final Application Period in the amount of $21,703.50 and (e) granting such other and further relief as the Court deems just and proper.

Dated: December 15, 2009
New York, NY

Respectfully submitted,

ARENT FOX LLP

_____ /s/ Schuyler G. Carroll_____
Schuyler G. Carroll
George P. Angelich
ARENT FOX LLP
1675 Broadway
New York, NY 10019
Tel: (212) 484-3900
Fax: (212) 484-3990

- and -

ELLIOTT GREENLEAF
Rafael X. Zahralddin-Aravena (No. 4166)
Shelley A. Kinsella
1105 North Market Street, Suite 1700
Wilmington, DE 19801
Tel: (302) 384-9400
Fax: (302) 656-3714

*Co-Counsel for the Official Committee of Unsecured Creditors of NPPI Holdings, Inc., et al.*