# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NPPI Holdings, Inc., <u>et al.</u>,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 09-11547 (PJW)<br><br>**Hearing Date: August 19, 2010 at 2:00 p.m.**<br>**Objection Deadline: August 9, 2010 at 4:00 p.m.** |

## MOTION FOR ENTRY OF AN AGREED ORDER APPROVING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE CHAPTER 7 TRUSTEE AND THE POST-CONVERSION COMMITTEE REGARDING DISTRIBUTION OF THE ESCROWED FUNDS PURSUANT TO FED. R. BANKR. P. 9019

Alfred T. Giuliano (the "<u>Trustee</u>"), the chapter 7 trustee for the estates of NPPI Holdings, Inc., <u>et al.</u> (the "<u>Debtors</u>"), by and through his attorneys, Fox Rothschild LLP, hereby respectfully requests the entry of an agreed order (the "<u>Agreed Order</u>") approving the settlement agreement by and between the Trustee and the Post-Conversion Committee of Unsecured Creditors (the "<u>PCC</u>") appointed in these chapter 7 cases pursuant to Fed. R. Bankr. P. 9019 (the "<u>Motion</u>"). In support of this Motion, the Trustee respectfully states as follows:

### Jurisdiction

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A) and (O).

---

[1] The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: NPPI Holdings, Inc (9391); NPPI, Inc. (4534); NPPI Sub 1, LLC (3446); NPPI Sub 2, LLC (4435); NPPI Sub 3, LLC (2652); and NPPI Sub 4, LLC (2740). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 10 W. Market Street, Suite 1400, Indianapolis, Indiana 46204.

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

4. On May 5, 2009, the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5. On November 24, 2009, the Court, by way of an order, converted the cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code. [D.I. No. 576].

6. On November 30, 2009, the Trustee was appointed as the Interim Trustee/Trustee of the estates of the Debtors, which appointment remains in effect [D.I. No. 577].

7. On December 16, 2009, the Court entered an order (i) denying the motion of the Official Committee of Unsecured Creditors (the "Committee") for an order authorizing the creation of the GUC Trust, the approval of the GUC Trust Agreement, and the Appointment of the GUC Trustee, and (ii) authorizing the post-conversion continuation of the Committee (the "PCC Continuation Order")[2] [D.I. No. 612].

8. Subsequent to the entry of the PCC Continuation Order, the Trustee and the PCC have received approval, by way of various orders entered by this Court of various stipulations between the PCC and the Trustee extending the existence of the PCC [D.I. Nos. 676, 684, 696 and 716].

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the PCC Continuation Order or the Settlement Stipulations (as defined below), as appropriate.

9. On June 15, 2010, the Trustee filed a motion, pending before the Court, seeking approval of the most recent stipulation by and between the PCC and the Trustee extending the existence of the PCC for an additional sixty days (the "PCC Extension Motion") [D.I. No. 717]. As a result of the filing of the PCC Extension Motion, the existence of the PCC is currently automatically extended until July 8, 2010. The PCC Extension Motion requests entry of an order extending the existence of the PCC up to and including August 16, 2010.

10. Pursuant to the PCC Continuation Order, the PCC Professionals shall be authorized to assert any and all rights and claims of general unsecured creditors in and to the funds currently being held by the Committee (the "Escrowed Funds") pursuant to, among other things, the *Stipulation and Agreed Order Among Wachovia Bank, N.A., Existing Bank Group Agent, on Behalf of Existing Bank Group Lenders, the Official Committee of Unsecured Creditors and the Debtors* [D.I. No. 319] and the *Order Approving Stipulation and Agreed Order Among Wachovia Bank, N.A., Existing Bank Group Agent, on Behalf of Existing Bank Group Lenders, the Official Committee of Unsecured Creditors and the Debtors* [D.I. No. 568)](together, the "Settlement Stipulations").

11. Additionally, pursuant to the PCC Continuation Order, the Trustee reserves all rights including, but not limited to, the right to assert that the Escrowed Funds are property of the Debtors' estates.

12. The PCC and the Trustee engaged in arm's length negotiations and have reached a settlement agreement governing the distribution of the Escrowed Funds, retention of special counsel to the Trustee and such other matters as more fully set forth in the Agreed Order, a proposed form of which is submitted with this Motion.

13. A summary of certain pertinent terms of the Agreed Order is as follows:[3]

  i. The PCC shall transfer the Escrowed Funds from the segregated account where such funds currently are being held to the Trustee, who will distribute such funds to the general unsecured creditors whose claims are allowed (other than the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders) and will use such funds for no other purpose besides making such distributions, except to pay the professional fees as described in the Agreed Order. No creditor or party in interest may object to such use of the Escrowed Funds, including, without limitation, the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders.

  ii. The Trustee shall file an application to engage Arent Fox LLP as special counsel to represent the Trustee with respect to the claims reconciliation process (including, but not limited to, reviewing claims and objecting to the same when necessary), which application shall be heard simultaneously with the hearing to consider approval of this Agreed Order.

  iii. The Agreed Order shall become effective only upon entry of an order approving the retention of Arent Fox LLP as special counsel to represent the Trustee in accordance with the terms of the Agreed Order.

  iv. Arent Fox LLP's representation of the Committee, the PCC and the Trustee does not constitute a conflict of interest, and all parties are forever barred from asserting that a conflict of interest exists with respect to Arent Fox LLP's representation of the Committee, the PCC and the Trustee.

  v. To the extent any excess funds are available after general unsecured creditors (other than the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders) have been paid in full, such excess funds may be used by the Trustee to pay other chapter 7 expenses and/or to make payments to any remaining creditors of the Debtors' estates who have not yet been paid in full.

  vi. The amount of the Escrowed Funds may be included in the calculation of the maximum commission to which the Trustee is entitled under section 326(a) of the Bankruptcy Code. The portion of the commission due to the Trustee which is attributable to the distribution of the Escrowed Funds will be paid from the Escrowed Funds.

---

[3] To the extent there is any inconsistency between the summary contained herein and the Agreed Order, the terms of the Agreed Order shall govern.

vii. As soon as practicable, but in no event later than 60 days after Arent Fox LLP has completed the claims objection process and advised the Trustee of the same in writing, Arent Fox LLP shall be required to file a motion, on behalf of the Trustee, to approve an interim distribution (the "<u>Distribution</u>") of all or a portion of the Escrowed Funds by the Trustee to general unsecured creditors (other than the Term A Lenders, Mezzanine Lenders and Holdco Lenders). Such distribution shall provide for payment of as much of the Escrowed Fund as possible (subject to any reserve necessary to fund the allowed fees of Arent Fox LLP), it being the intention that all of the Escrowed Funds be distributed as soon as practicable.

viii. The findings of fact and conclusions of law contained in the Agreed Order shall bind all creditors and parties in interest including, without limitation, the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders.

## **Relief Requested**

14. By and through this Motion, the Trustee seeks entry of the Agreed Order approving the settlement agreement by and between the Trustee and the PCC pursuant to Fed. R. Bankr. P. 9019.

15. Rule 9019 provides that "[o]n motion by the [T]rustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor. . . and to any other entity as the court may direct. Fed. R. Bankr. P. 9019(a); *see also Myers v. Martin (In re Martin),* 91 F.3d 389, 393 (3d Cir. 1996).

16. The Trustee is obligated to maximize the value of these estates and make his decisions in the best interests of all of the creditors of these estates. *See Martin,* 91 F.3d at 394. The Trustee believes, in his business judgment, that entry of the Agreed Order submitted with this Motion is in the best interests of these estates and all of the creditors. Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *See Martin,* 91 F.3d at 395.

17. In determining whether a settlement should be approved under Bankruptcy Rule 9019, the Court must "assess and balance the value of the claim that is being compromised

against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393. In striking this balance, courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors" *Id.* (citation omitted).

18. In the present case, the Agreed Order should be approved because (i) sound business justification supports it, (ii) it is reasonable, and (iii) the four *Martin* factors weigh in favor of approval. Rather than litigating over the distribution of the Escrowed Funds, the PCC and the Trustee have agreed to enter into the Agreed Order.

19. As for the first, and in this case most important *Martin* factor, based on orders entered by this Court, which contain findings of fact and conclusions of law that the Escrowed Funds are available exclusively for distribution to general unsecured creditors, it is uncertain whether the Trustee would be successful in any litigation to determine whether the Escrowed Funds are property of these estates. The second *Martin* factor is essentially neutral, as there likely would not be difficultly in collection, but because any litigation might be appealed and might not be resolved for an extended period of time (and again, because the probability of success is low), this factor is not material to the analysis.

20. The third *Martin* factor weighs in favor of approval, as had this agreement not been reached, these estates would have the added expense of financing the litigation related to this dispute. The Agreed Order provides a resolution in the near term that avoids the risks and costs associated with litigation. For these same reasons, the fourth *Martin* factor weighs in favor of approving the Agreed Order, as the Agreed Order will allow for the orderly distribution of the Escrowed Funds to general unsecured creditors, as was intended by the Settlement Stipulations. Thus, the risk of litigation, as well as the complexity, cost and delay of continuing to litigate this

matter are sufficient to establish the necessary benefits to approve the Agreed Order, which is fair, equitable and in the best interest of all parties.

21. The Trustee submits that the settlement agreement as set forth in the Agreed Order is a prudent exercise of the Trustee's business judgment. Specifically, the Trustee submits that the settlement agreement will provide a benefit to the estates because it allows for the orderly distribution of the Escrowed Funds to general unsecured creditors whose claims are allowed (other than the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders)[4] and eliminates the cost and litigation risk which would result from a judicial determination of ownership of the Escrowed Funds.

22. The parties engaged in good faith settlement negotiations to resolve the outstanding issues of the Trustee and the PCC. The Trustee believes that the settlement agreement embodies a fair resolution of these matters and is in the best interests of the Debtors' estates and should therefore be approved by the Court.

## Notice

23. Pursuant to Fed. R. Bankr. P. 2002, the Trustee is obligated to give notice to all creditors and to the Office of the United States Trustee of any settlement agreement. Fed. R. Bankr. P. 2002(A)(3).

---

[4] The distribution of the Escrowed Funds only to general unsecured creditors whose claims are allowed, other than the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders (i.e. excluding the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders) is appropriate pursuant to, among other things, the Settlement Stipulations. The purpose of the Settlement Stipulations was precisely to ensure that funds that otherwise would have been paid to the Term A Lenders be paid solely and exclusively to the general unsecured creditors of the Debtors, with the specific exclusion of the Mezzanine Lenders and the Holdco Lenders. In fact, during the negotiation of the Settlement Stipulations it was made clear that none of the Escrowed Funds would be paid to the Mezzanine Lenders and the Holdco Lenders. The Escrowed Funds were made available to general unsecured creditors whose claims are allowed (other than the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders) pursuant to the Settlement Stipulations, and the Term A Lenders had the authority to enter into the Settlement Stipulations and provide for the Escrowed Funds not to be distributed to the Term A Lenders, the Mezzanine Lenders and the Holdco Lenders.

24. The amount of creditors for these jointly administered cases exceeds 12,000. Accordingly, simultaneously with the filing of this Motion, the Trustee also filed a motion to limit notice of the Motion to (i) the Office of the United States Trustee, (ii) the PCC, (iii) the Debtors' counsel and (iv) all parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002 (the "<u>2002 List</u>"). The Trustee has served notice of this Motion on all parties on the 2002 List, Debtors' counsel and the Office of the United States Trustee. The Trustee requests that the Court determine that such notice is sufficient and proper.

WHEREFORE, the Trustee requests that the Court enter the Agreed Order in the form attached hereto approving the Motion and the settlement agreement and for other relief as is proper and just.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: */s/ Sheldon K. Rennie*
Sheldon K. Rennie, Esquire
Delaware Bar No. 3772
919 N. Market Street, Suite 1300
Wilmington, DE 19801-3046
Telephone (302) 654-7444/Facsimile (302) 656-8920
srennie@foxrothschild.com
-and-

Michael G. Menkowitz, Esquire
Marie C. Dooley, Esquire
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone (215) 299-2000/Facsimile (215) 299-2150
mmenkowitz@foxrothschild.com
mdooley@foxrothschild.com

Attorneys for Alfred T. Giuliano, Chapter 7 Trustee
for the estates of NPPI Holdings, Inc, <u>et</u> <u>al.</u>

Dated: July 19, 2010